## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOSE TRUJILLO, an individual, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>     v.<br><br>APPLE COMPUTER, INC., a California Corporation, and AT&T MOBILITY LLC, a Georgia Corporation,<br><br>               Defendants. | Civil Case No. 1:07-cv-04946<br><br>Hon. Matthew F. Kennelly<br>Mag. Judge Ashman<br>(Oral Argument Requested) |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS ACTION

---

Dated: October 16, 2007

Victoria Collado
Sarah E. Reynolds
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711

Evan M. Tager (application for *pro hac vice* pending)
Archis A. Parasharami (application for *pro hac vice* pending)
Kevin Ranlett (*pro hac vice*)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3000

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    A.    Trujillo Agrees To Resolve Any Dispute He Might Have With ATTM Either Through Individual Arbitration Or In Small Claims Court ........................... 2

    B.    ATTM's Arbitration Provision Is Uniquely Favorable To Consumers ................ 2

    C.    Trujillo Files This Putative Class Action Lawsuit Notwithstanding His Agreement to Arbitrate ........................................................................................ 4

ARGUMENT ....................................................................................................................... 5

I.    THE FEDERAL ARBITRATION ACT REQUIRES ENFORCEMENT OF THE PARTIES' ARBITRATION AGREEMENT AS WRITTEN .......................................... 5

II.    THE CLASS-ARBITRATION WAIVER IN TRUJILLO'S ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE UNDER ILLINOIS LAW .................... 6

    A.    Trujillo's Arbitration Agreement Is Not Procedurally Unconscionable ............. 6

    B.    ATTM's Arbitration Provision Is Not Substantively Unconscionable ................ 8

III.    THE FAA WOULD PREEMPT ANY STATE-LAW RULE UNDER WHICH ATTM'S ARBITRATION PROVISION WOULD BE DEEMED UNCONSCIONABLE ............................................................................................................. 10

    A.    Express Preemption ......................................................................................... 10

    B.    Conflict Preemption ........................................................................................ 13

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992) ........................................... 15

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ....................................................... 14

*Bess v. DirecTV, Inc.*, __ N.E. 2d __, 2007 WL 2013613
(Ill. App. Ct. July 10, 2007) ................................................................................................. 6, 7

*Blitz v. AT&T Wireless Servs., Inc.*, No. 054-00281
(Mo. Cir. Ct. Nov. 28, 2005) .................................................................................................. 15

*Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141 (1989) .................................................... 13, 15

*Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002) ................................................................... 9

*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) ..................................... 13

*Calvin v. Sheriff of Will County*, 405 F. Supp. 2d 933 (N.D. Ill. 2005) ........................................ 15

*Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903 (7th Cir. 2004) ...................................... 7

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
252 F.3d 707 (4th Cir. 2001) ................................................................................................. 15

*Deputy v. Lehman Bros., Inc.*, 374 F. Supp. 2d 695 (E.D. Wis. 2005) ......................................... 15

*Doctor's Associates. v. Casarotto*,  517 U.S. 681 (1996) ...................................................... 11, 12

*Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*,
430 F.3d 1269 (10th Cir. 2005) ............................................................................................. 14

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ................................................................................ 13

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) ........................................................................ 5

*Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*,
408 N.E.2d 403 (Ill. App. Ct. 1980) ....................................................................................... 6

*Gilmer v. Interstate/Johnson Lane Corp.* 500 U.S. 20, 31 (1991) ............................................... 13

*Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) ............................................................... 15

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
379 F.3d 159, 167 (5th Cir. 2004) .................................................................................... 11, 13

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Kinkel v. Cingular Wireless LLC*, 857 N.E. 2d 250 (Ill. 2006) .............................................. *passim*

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) ................................................................. 15

*Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51 (Ariz. 1995) ............................... 8, 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
        473 U.S. 614 (1985) .................................................................................. 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ................................ 5

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
        514 U.S. 645 (1995) .................................................................................. 13

*Oblix, Inc. v. Winiecki*, 374 F.3d 488 (7th Cir. 2004) .............................................. 7, 12

*Perry v. Thomas*, 482 U.S. 483 (1987) ................................................................. 11, 13

*Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351 (Tenn. Ct. App. 2001) ........................... 15

*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997) ................................. 15

*Razor v. Hyundai Motor Am.*, 854 N.E.2d 607 (Ill. 2006) ........................................... 8

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989) ...................... 14

*Schultz v. AT&T Wireless Servs., Inc.*, 376 F. Supp. 2d 685 (N.D. W. Va. 2005) ............. 15

*Shroyer v. New Cingular Wireless Services, Inc.*, 2007 WL 2332068
        (9th Cir. Aug. 17, 2007) ........................................................................ 15

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) .......................... 12

*United States v. Corum*, 362 F.3d 489 (8th Cir. 2004) ................................................. 5

*United States v. Locke*, 529 U.S. 89 (2000) ........................................................... 13

*Wilko v. Swan*, 346 U.S. 427 (1953) ................................................................. 14

*Wise v. Wachovia Sec., LLC*, 450 F.3d 265 (7th Cir. 2006) ......................................... 14

## STATUTES AND RULES

15 U.S.C. § 1681n ........................................................................................... 9

205 ILCS 690/35 ............................................................................................ 10

iii

TABLE OF AUTHORITIES
(continued)

**Page(s)**

210 ILCS 35/10(6) ............................................................................................ 9

Federal Arbitration Act, 9 U.S.C. §§ 1–16 .................................................... 1

    9 U.S.C. § 2 ............................................................................................ *passim*

    9 U.S.C. § 4 ...................................................................................................... 6

    9 U.S.C. § 10 .................................................................................................... 14

Fed. R. Civ. P. 11(b) ........................................................................................ 3

Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq* ............................ 5

Ill. Sup. Ct. R. 281 .......................................................................................... 3

**OTHER AUTHORITIES**

Linsday R. Androski, Comment, *A Contested Merger: The Intersection of Class Actions and Mandatory Arbitration Clauses*, 2003 U. CHI. LEGAL F. 631 ...................................... 14

Jonathan Bunch, *To Be Announced: Silence from the United States Supreme Court and Disagreement Among Lower Courts Suggest an Uncertain Future for Class-Wide Arbitration*, 2004 J. DISP. RESOL. 259 ............................................................... 14

Christopher Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 VAND. L. REV. 729 (2006) ......................................................................... 13

Gail Hillebrand & Daniel Torrence, *Claims Procedures in Large Consumer Class Actions and Equitable Distribution of Benefits*, 28 SANTA CLARA L. REV. 747 (1988) .................. 12

*Joint Hearings on S. 1005 and H.R. 646 Before the Subcomms. of the Comms. on the Judiciary*, 68th Cong., 1st Sess. (1924) ........................................................... 14

Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 U.C.L.A. L. REV. 991 (2002) ................................ 12

James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443 (2005) ............................................................... 12

Tr. of Oral Argument, *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), *available at* 2003 WL 1989562 ........................................................................ 14

## INTRODUCTION

Defendant AT&T Mobility LLC ("ATTM"), formerly known as Cingular Wireless LLC ("Cingular"), respectfully moves to compel arbitration and to dismiss all claims against it. When plaintiff Jose Trujillo activated his iPhone for use with ATTM's wireless service, he agreed to pursue any disputes on an individual basis in arbitration or small claims court. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, requires Trujillo to honor his obligation.

Trujillo will likely argue that, under the Illinois Supreme Court's decision in *Kinkel v. Cingular Wireless LLC*, 857 N.E. 2d 250 (Ill. 2006), his agreement to arbitrate his claims on an individual (rather than class-wide) basis is unenforceable. In *Kinkel*, the court invalidated an earlier version of ATTM's (then Cingular's) arbitration provision because "the agreement containing the [class-arbitration] waiver [was] burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner." *Id.* at 274.

But ATTM's current arbitration provision has resolved the concerns identified in *Kinkel*. In any arbitration under the current provision (except one in which the claim is determined to be frivolous), ATTM is obligated to pay all of the costs of arbitration and, if the customer prevails, to pay his or her attorneys' fees to the full extent required by law. In addition, if the arbitral award exceeds the amount of ATTM's last settlement offer, the arbitration provision requires ATTM to pay the customer $10,000 or the amount of the award, whichever is higher, and to pay double attorneys' fees even if the applicable law does not provide for attorneys' fees at all. These features satisfy *Kinkel* by ensuring that Trujillo and other Illinois customers may "obtain a remedy for the particular claim being asserted in a cost-effective manner" under ATTM's arbitration provision. *Id.*

Moreover, any argument by Trujillo that ATTM's unprecedentedly pro-consumer arbitration provision is unenforceable under Illinois law merely because it requires traditional, individual arbitration would run headlong into Section 2 of the FAA. Section 2 specifies that courts may invalidate arbitration provisions only on grounds that are equally applicable to all contractual provisions. While at the most general level unconscionability is a ground for the revocation of any contract, it would take a distortion of unconscionability principles to justify striking down the class-arbitration waiver in ATTM's arbitration provision. Indeed, to call this provision "unconscionable" notwithstanding the incentives it provides to customers and their lawyers would

be to drain the concept of "unconscionability" of all meaning.

In addition, if embraced, any argument that the class-arbitration waiver in ATTM's current arbitration provision is unconscionable would frustrate the purposes of the FAA and therefore be preempted under the doctrine of conflict preemption. A core purpose of the FAA is to encourage the use of arbitration. Businesses use arbitration because it is faster, simpler, less expensive, and less adversarial than litigation—advantages that exist only when arbitration is conducted on an individual basis. Class arbitration affords none of the benefits of individual arbitration, yet multiplies the risks of individual arbitration exponentially (without the opportunity for the kind of appellate review available in a judicial class action). Accordingly, any rule that conditions the enforcement of arbitration provisions on the absence of a class-arbitration waiver will deter businesses from including arbitration provisions in their consumer contracts. Because that outcome is inimical to the pro-arbitration purposes of the FAA, such a rule would be preempted.

## BACKGROUND

### A.    Trujillo Agrees To Resolve Any Dispute He Might Have With ATTM Either Through Individual Arbitration Or In Small Claims Court.

Trujillo is an Illinois resident. First Am. Compl. ¶ 1. In July 2007, he purchased an iPhone at a store and, to use the iPhone with ATTM's wireless service, activated it online. Declaration of Neal S. Berinhout ¶ 7. To activate his phone, Trujillo was required to click on a box next to the statement "I have read and agree to the AT&T Service Agreement." *Id.* ¶ 10. The text of the service agreement, including its terms of service, was displayed in a text box immediately above the statement Trujillo checked. *Id.* Ex. 4, at 7. The first sentence advised Trujillo that, by checking the box next to the acknowledgement below, he would be "bound" to "the Terms of Service, including the ***binding arbitration clause***." *Id.* (emphasis added).

The terms of service included in Trujillo's service agreement were also available on ATTM's web site and in the store in which Trujillo bought his iPhone. *Id.* ¶ 9. In addition, ATTM mailed Trujillo the applicable Terms of Service booklet after he activated his iPhone. *Id.* ¶ 11. The terms of service contain an arbitration provision that states that "[ATTM] and you agree to arbitrate **all disputes and claims between us**" or to pursue such disputes in small claims court. *Id.* Ex. 3, at 12 (emphasis in original). The provision specifies that arbitration must be conducted on an individual rather than class-wide basis. *Id.* Ex. 3, at 12, 15.

### B.    ATTM's Arbitration Provision Is Uniquely Favorable To Consumers.

ATTM's arbitration provision is, to ATTM's knowledge, the most pro-consumer arbitra-

tion provision in the country.  Richard Nagareda, a law professor at Vanderbilt University whose scholarship focuses on aggregate dispute resolution, observes that he has "never seen an arbitration provision that has gone as far as this one to provide incentives for consumers and their prospective attorneys to bring claims" on an individual basis.  Declaration of Richard A. Nagareda ¶ 11.  The provision includes the following features that were designed to make arbitration convenient and inexpensive for ATTM's customers (Berinhout Dec. ¶ 9 & Ex. 3, at 12–15):

- **cost-free arbitration**:  **"**[ATTM] will pay all [American Arbitration Association ("AAA")] filing, administration and arbitrator fees" unless the arbitrator determines that the claim "is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))";[1]

- **$10,000 minimum award**:  If the arbitrator issues an award in favor of Trujillo that is greater than "[ATTM]'s last written settlement offer before an arbitrator was selected" but less than $10,000, ATTM will pay Trujillo $10,000 rather than the smaller arbitral award;[2]

- **double attorneys' fees**:  If the arbitrator awards Trujillo more than ATTM's last written settlement offer, then "[ATTM] will * * * pay [Trujillo's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses, that [Trujillo's] attorney reasonably accrues for investigating, preparing, and pursuing [Trujillo's] claim in arbitration";[3]

- **small claims court option**:  Either party may bring a claim in small claims court;

- **geographic proximity**:  Arbitration will take place "in the county * * * of [Trujillo's] billing address";

- **no confidentiality requirement**:  There is no requirement that the arbitration be kept confidential;

- **punitive damages available**:  There is no limitation on the availability of punitive damages;

- **AAA consumer procedures**:  Arbitration will be conducted under the AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes; and

- **choice of in-person, telephonic, or no hearing**:  For claims of $10,000 or less, customers like Trujillo have the exclusive right to choose whether the arbitrator will conduct an in-

---

[1]     In the event that an arbitrator concludes that a customer's claim is frivolous, the AAA's consumer arbitration rules would cap a consumer's arbitration costs at $125.  *See* Berinhout Dec. Exs. 9–10 (AAA, Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes ("*AAA Consumer Procedures*") § C-8).

[2]     The amount of the minimum payment varies from state to state because it is tied to the jurisdictional maximum of the customer's local small claims court.  Berinhout Dec. Ex. 3, at 14.  In Illinois, the jurisdictional limit for small claims court is $10,000.  *See* Ill. Sup. Ct. R. 281.

[3]     This attorney premium "supplements any right to attorneys' fees and expenses [that Trujillo] may have under applicable law."  Berinhout Dec. Ex. 3, at 15.  In other words, even if an arbitrator were to award Trujillo less than ATTM's last settlement offer, he would be entitled to an award of attorneys' fees to the same extent as if his claim had been brought in court.

3

person hearing, a telephonic hearing, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator."[4]

In addition, ATTM has tailored other aspects of the dispute-resolution process to ensure its effectiveness for consumers. Customers can obtain redress informally without the need for arbitration by contacting ATTM's customer care department by phone or e-mail. *Id.* ¶ 16. This process works: In August 2007 (the most recent month for which data are available), ATTM's customer service representatives dispensed about $113 million in credits for customer concerns and complaints. *Id.* ¶ 17. Over the preceding 12 months, ATTM representatives dispensed over $1 billion in manual credits. *Id.*

Should a customer still have a concern, he or she can take the next step—as required by ATTM's arbitration provision—of notifying ATTM of the dispute in writing. That is as simple as mailing a letter to ATTM or submitting a one-page Notice of Dispute form that ATTM has posted on its web site (at http://www.att.com/arbitration-forms). *Id.* ¶ 14 & Ex. 7.

ATTM generally responds to a dispute notice with a written settlement offer. *See id.* ¶ 20. If ATTM and the customer cannot resolve the dispute within 30 days, the customer may begin the formal arbitration process. To do so, the customer need only fill out a one-page Demand for Arbitration form and send copies to the AAA and to ATTM. Customers may either obtain a copy of the demand form from the AAA's web site (at http://www.adr.org) or use the simplified form that ATTM has posted on its web site (at http://www.att.com/arbitration-forms). *Id.* ¶ 14 & Ex. 8. To further assist its customers, ATTM has posted on its web site a layperson's guide on how to arbitrate a claim. *Id.* ¶ 13 & Ex. 6 (http://www.att.com/arbitration-information).

Not surprisingly, many ATTM customers have found individual arbitration to be a viable dispute resolution mechanism: Between January and mid-August 2007, ATTM received over 450 notices of dispute or demands for arbitration. *Id.* ¶ 21.[5] By contrast, over the same time period, consumers attempted to file fewer than 20 class action lawsuits. *Id.* ¶ 22.

### C.    Trujillo Files This Putative Class Action Lawsuit Notwithstanding His Agreement to Arbitrate.

Despite having agreed to arbitrate all disputes against ATTM (or to bring them in small

---

[4]    Under the AAA rules that would otherwise apply, either party may insist on a hearing in cases involving claims of $10,000 or less. Berinhout Dec. Exs. 6-7 (*AAA Consumer Procedures* §§ C-5, C-6). For claims exceeding $10,000, a hearing would be held unless both parties agreed to forgo it. *Id.*

[5]    In addition, as noted above, ATTM's arbitration provision gives customers the option of filing claims in small claims court. ATTM responded to almost 850 such claims in 2005 and 2006. Berinhout Dec. ¶ 23.

claims court), Trujillo filed an amended complaint in this putative class action, naming ATTM as a defendant.[6]  He alleges that, in marketing the iPhone, Apple and ATTM failed to disclose adequately the details of the iPhone battery-replacement program, thus violating the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.*  He also raises a variety of common-law claims.  First Am. Compl. p. 7–20.[7]  Trujillo seeks to represent a class consisting of "all consumers, from 2007 to the date of judgment, throughout the United States, who purchased Defendants' iPhone."  *Id.* ¶ 25.  He seeks compensatory and punitive damages, an accounting "for all revenues improperly earned," and attorneys' fees and costs.  *Id.* p. 20.

Because Trujillo's lawsuit against ATTM breached his agreement to arbitrate, ATTM sent Trujillo's counsel a letter requesting that his client pursue his claims against ATTM either by individual arbitration or in small claims court.  Ex. 1.  Trujillo refused to do so.  Ex. 2.

## ARGUMENT

### I.    THE FEDERAL ARBITRATION ACT REQUIRES ENFORCEMENT OF THE PARTIES' ARBITRATION AGREEMENT AS WRITTEN.

The FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements * * *[,] to place [these] agreements upon the same footing as other contracts[,] * * * [and to] manifest a liberal federal policy favoring arbitration agreements."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quotation marks omitted).  Accordingly, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The FAA applies if the arbitration agreement is "written" and in a contract "evidencing a transaction involving commerce."  9 U.S.C. § 2.  Both criteria are met here:  ATTM's arbitration provision is in writing (*see* page 2, *supra*), and Trujillo's agreement involves interstate commerce.  "It is well-established that telephones, even when used intrastate, are instrumentalities of interstate commerce."  *United States v. Corum*, 362 F.3d 489, 493 (8th Cir. 2004).  Moreover,

---

[6]    Trujillo filed his initial complaint in state court on July 26, 2007, and named as defendants Apple Computer, Inc. ("Apple") and AT&T Inc.  After Apple timely removed the case to this Court on August 31, 2007, Trujillo filed an amended complaint that substituted ATTM as a defendant for AT&T Inc.

[7]    After paragraph 29 on page 7 of Trujillo's First Amended Complaint, the remaining paragraphs are not numbered consecutively.  Instead, each Count begins anew with a paragraph 30.  Accordingly, we cite to the relevant page numbers of the First Amended Complaint whenever citing to the paragraph number would be ambiguous.

Trujillo's agreement specifies that it is covered by the FAA. Berinhout Dec. Ex. 3, at 12. When, as here, the FAA governs an arbitration provision that covers the plaintiffs' claims, the district court must compel arbitration. 9 U.S.C. § 4.

## II. THE CLASS-ARBITRATION WAIVER IN TRUJILLO'S ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE UNDER ILLINOIS LAW.

Illinois law evaluates procedural and substantive unconscionability on a sliding scale, though an extreme showing of one may substitute for lack of the other. *Kinkel*, 857 N.E. 2d at 263; *see also Bess v. DirecTV, Inc.*, __ N.E. 2d __, 2007 WL 2013613, at *7 (Ill. App. Ct. July 10, 2007). In *Kinkel*, the Illinois Supreme Court held that an earlier version of ATTM's (then Cingular's) arbitration provision—used in contracts between 2001 and early 2003—was procedurally and substantively unconscionable. 857 N.E.2d at 266, 274–75, 278. But the court explicitly reserved judgment on the more pro-consumer arbitration provision that Cingular promulgated in 2003, which in turn has been superseded by the even more pro-consumer provision at issue in this case. *See id.* at 275. And in *Bess*, the Illinois Appellate Court held that an arbitration provision in DirecTV's agreements with its customers was procedurally unconscionable to such an extent that the provision was invalid without regard to its substance. 2007 WL 2013613, at *7–*8. As we explain below, ATTM's current arbitration provision lacks the flaws identified in *Kinkel* and *Bess*, and accordingly is fully enforceable.

### A. Trujillo's Arbitration Agreement Is Not Procedurally Unconscionable.

Under Illinois law, "[p]rocedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice.'" *Kinkel*, 857 N.E. 2d at 264 (quoting *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. Ct. 1980)). "'Factors to be considered are all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability.'" *Id.* (quoting *Frank's*, 408 N.E.2d at 410).

In *Kinkel*, the Illinois Supreme Court held that Cingular's 2001 arbitration provision implicated "a degree of procedural unconscionability" because it merely stated that "fee information" was available "upon request" rather than specifying the actual cost to the customer to arbitrate a claim. 857 N.E.2d at 266. In *Bess*, the Illinois Appellate Court held that DirecTV's arbi-

tration provision implicated "procedural unconscionability [that] is sufficient to invalidate the arbitration provision" because the non-negotiable arbitration provision was hidden at the end of a series of terms printed "in single-spaced lines of very small font" and because the provision was not mailed to the customer until the customer had already become a subscriber and purchased "satellite television equipment." 2007 WL 2013613, at *6–*7. The court found it significant that a DirecTV customer could not avoid accepting the arbitration provision without paying a "deactivation fee" to cancel his contract; in addition, the court concluded that the customer could not obtain "reimbursement of [the] equipment costs." *Id*. at *6–*7.

Under the standards set forth in *Kinkel* and *Bess*, Trujillo's agreement is not procedurally unconscionable. To be sure, Trujillo's service agreement was a form contract like the ones in *Kinkel* and *Bess*. But as the Illinois Supreme Court made clear, it is not necessarily procedurally unconscionable to use contractual terms that are "nonnegotiable and presented in fine print in language that the average consumer might not fully understand." *Kinkel*, 857 N.E.2d at 266. Rather, "[c]onsumers routinely sign such agreements"—as they "are a fact of modern life"—and hence "[i]t cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable." *Id.*; *see also Bess*, 2007 WL 2013613, at *5 ("[T]he fact that a contract is offered in a form contract on a take-it-or-leave-it basis does not automatically render a contract term procedurally unconscionable.") (quotation marks omitted); *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) ("Standard-form agreements are a fact of life, and given § 2 of the Federal Arbitration Act, 9 U.S.C. § 2, arbitration provisions in these contracts must be enforced unless states would refuse to enforce all off-the-shelf package deals.").[8] Indeed, because an iPhone is indisputably not a necessity of life, there is nothing oppressive about a take-it-or-leave-it offer for its terms of service.

Trujillo's agreement with ATTM exhibits none of the severe defects identified in *Bess*. That agreement—including its arbitration provision—was presented to Trujillo when he first requested service activation from ATTM—not, as in *Bess*, well after the fact. Trujillo clicked on the box stating that he had "read and agree[d] to the AT&T Service Agreement" as a precondition to proceeding to the remaining screens that finalized the activation process. Berinhout Dec.

---

[8]    In rejecting an argument that an adhesive arbitration provision is unconscionable under Delaware law, the Seventh Circuit observed that form contracts "reduce transaction[] costs and benefit consumers because, in competition, reductions in the cost of business show up as lower prices * * *." *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004).

¶ 10 & Ex. 4, at 7.  Trujillo's service agreement also prominently disclosed the arbitration provisions.  The very first sentence in the text box displaying his service agreement notified him that the terms of service included a "binding arbitration clause."  *Id.*  In addition, the top of the first page of the Terms of Service booklet that was mailed to him states that "**This Agreement requires the use of arbitration to resolve disputes** * * *."  *Id.* Ex. 3, at 1 (emphasis in original).  The first paragraph of the arbitration provision itself states that "**Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.**"  *Id.* Ex. 3, at 11 (emphasis in original).  Moreover, Trujillo's agreement with ATTM gave him 14 days to cancel service without having to pay an early-termination fee.  *Id.* Ex. 2, at 1.[9]  And Trujillo had a choice:  At least two other carriers offer wireless service in his area without requiring individual arbitration.  Declaration of Kevin Ranlett ¶¶ 2–5.

Moreover, Trujillo's agreement lacks the flaw that caused the Illinois Supreme Court to find a modest degree of procedural unconscionability in the original Cingular provision:  It makes clear that ATTM pays all the costs of any non-frivolous arbitration.  *See* page 3 & n.1, *supra*.  Accordingly, Trujillo's arbitration agreement is not procedurally unconscionable.  Therefore, under Illinois's sliding-scale approach, that agreement must entail ***extreme*** substantive unconscionability to be unenforceable.  As we next explain, it is not substantively unconscionable at all, much less extremely so.

**B.     ATTM's Arbitration Provision Is Not Substantively Unconscionable.**

To establish that ATTM's arbitration provision is substantively unconscionable under Illinois law, Trujillo must show that its terms are "inordinately one-sided in one party's favor."  *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006).  "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity."  *Kinkel*, 857 N.E.2d at 267 (quoting *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 58 (Ariz. 1995)).

An arbitration provision that prohibits class-wide adjudication is not automatically unconscionable under Illinois law.  As the *Kinkel* court explained, "[i]t is not unconscionable or even unethical for a business to attempt to limit its exposure to class arbitration or litigation" be-

---

[9]     A 10 percent restocking fee would be charged to any customer who returned an iPhone after opening the box.  Berinhout Dec. Ex. 2, at 1.

cause "consumers may benefit from reduced costs if companies are allowed to" use class-arbitration waivers.  857 N.E.2d at 278; *accord Boomer v. AT&T Corp.*, 309 F.3d 404, 419 n.7 (7th Cir. 2002) ("Arbitration offers cost-saving benefits [that] * * * are reflected in a lower cost of doing business that in competition are passed along to customers.") (quotation marks omitted). Accordingly, the *Kinkel* court held, "a class action waiver will not be found unconscionable * * * if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner." *Id.* at 274.

To be sure, the court found two defects in Cingular's ***2001*** arbitration provision.  First, because the provision required the customer to pay $125 in arbitration costs and—as interpreted by the court—did not provide for prevailing-party attorneys' fees, the court held that the provision "create[d] a situation where the cost of vindicating the [customer's $150] claim is so high that the plaintiff's only reasonable, cost-effective means of obtaining a complete remedy" would be a class action.  *Id.* at 275.  Second, the court observed that the arbitration provision included a "strict confidentiality clause" that "burden[s] an individual customer's ability to vindicate this claim." *Id.*

The ***2006*** provision at issue here does not suffer from either defect.  First, the 2006 provision does not require Trujillo to pay *any* of the costs of arbitration.  *See* page 3, *supra*.  Because it costs him nothing to arbitrate, this is not "a situation [in which] the cost of vindicating the claim is so high" (*Kinkel*, 857 N.E.2d at 275) that he cannot pursue his claim on an individual basis.  Second, the 2006 provision contains no confidentiality requirement.  *See* page 3, *supra*.

Although these two changes would have been enough to make the arbitration provision enforceable under *Kinkel*, ATTM did not stop there.  Instead, it created unprecedented incentives for customers to pursue claims in individual arbitration.  As discussed above, an Illinois customer like Trujillo would be entitled to a minimum award of ***$10,000*** and ***double*** attorneys' fees if the arbitrator were to award him more than ATTM's last settlement offer.  *See* page 3, *supra*. These amounts far exceed the level of damages that Congress and the Illinois Legislature have deemed sufficient to encourage individuals and their counsel to pursue statutory claims.  Nagareda Dec. ¶ 14 (citing $500 statutory damages provision in Telephone Consumer Protection Act and $1,000 statutory damages provision in Cable Act); 15 U.S.C. § 1681n (statutory damages of between $100 and $1,000 available under Fair Credit Reporting Act); 210 ILCS 35/10(6)

($500 statutory damages under Community Living Facilities Licensing Act); 205 ILCS 690/35 ($1,000 statutory damages under Check Printer and Check Number Act). Moreover, even if Trujillo were awarded less than ATTM's last settlement offer and therefore was not entitled to the $10,000 premium and double attorneys' fees, he would remain entitled to recover attorneys' fees to the same extent as if he had sued in court. *See* page 3 & n.3, *supra*.

In short, ATTM's arbitration provision poses no obstacle to "obtain[ing] a remedy for the particular claim being asserted in a cost-effective manner." *Kinkel*, 857 N.E.2d at 274. As Professor Nagareda explains, although arbitration provisions containing class-arbitration prohibitions may be substantively unconscionable when their enforcement would result in "the effective elimination of consumers' private rights of action" (Nagareda Dec. ¶ 7), ***ATTM's*** arbitration provision is not of that type. To the contrary, that provision "reduces dramatically the cost barriers to the bringing of individual consumer claims, is likely to facilitate the development of a market for fair settlement of such claims, and provides financial incentives for consumers (and their attorneys, if any) to pursue arbitration in the event that they are dissatisfied with whatever offer ATTM has made to settle their disputes." *Id.* ¶ 11. Therefore, it is not substantively unconscionable at all. At minimum, taking into account that there is minimal (if any) procedural unconscionability, this unprecedentedly pro-consumer arbitration provision does not rise sufficiently high on the spectrum of substantive unconscionability as to warrant refusing to enforce it.

## III. THE FAA WOULD PREEMPT ANY STATE-LAW RULE UNDER WHICH ATTM'S ARBITRATION PROVISION WOULD BE DEEMED UNCONSCIONABLE.

The anticipated argument that ATTM's arbitration provision is unconscionable not only is wrong under Illinois law but also would be preempted by the FAA—both expressly by Section 2 of the FAA and under the doctrine of conflict preemption.

### A. Express Preemption.

Under Section 2 of the FAA:

> An agreement to arbitrate is valid, irrevocable, and enforceable, ***as a matter of federal law*** "save upon such grounds as exist at law or in equity for the revocation of ***any*** contract." Thus state law, whether of legislative or judicial origin, is applicable ***if*** that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. A court

> may not, then, * * * rely on the uniqueness of an agreement to ar-
> bitrate as a basis for a state-law holding that enforcement would be
> unconscionable * * *.

*Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (citations omitted; emphases in original); *see also Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). Invalidating ATTM's uniquely pro-consumer arbitration provision would run afoul of Section 2 in several ways.

 **1.** Section 2 of the FAA preempts even "general principle[s] of contract law, such as unconscionability," if "those general doctrines" are "employ[ed] * * * in ways that ***subject arbitration clauses to special scrutiny***." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004) (emphasis added); *see also Perry*, 482 U.S. at 492 n.9 (state courts cannot "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable"). Under Illinois's generally applicable principles of unconscionability law, a contractual term is substantively unconscionable only if it is "op-press[ively]" "one-sided" and involves "an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Kinkel*, 857 N.E.2d at 267 (quoting *Maxwell*, 907 P.2d at 58)). The only way ATTM's arbitration provision could be held unconscionable under Illinois law would be to ignore this standard and to subject the provision to special scrutiny.

 There is nothing oppressively one-sided about a consumer's agreeing to arbitrate under ATTM's consumer-friendly provision in lieu of participating in class actions—nor is an "overall imbalance" imposed by such an agreement. To the contrary, reasonable customers might—indeed, should—***prefer*** to arbitrate under the terms of ATTM's provision rather than to pursue a class action. Because ATTM's arbitration procedures are designed to make it so simple to obtain relief (*see* pages 3–4, *supra*), invoking those procedures is much easier and faster than bringing a class action. Working with a lawyer, preparing affidavits, being deposed, and attending the class certification hearing would doubtless entail many days of missed work. That lost time may stretch into weeks should the case actually proceed to trial. Moreover, the prospective economic reward for arbitrating under ATTM's provision is ***much*** greater than the amounts that could be expected from participating in a class action. As discussed above, under ATTM's arbitration provision, individuals with small claims may be entitled to minimum payments of thousands of dollars. *See* page 3, *supra*. By contrast, members of class actions rarely receive more than pennies on the dollar for their claims and never would receive more than the amount of their claims.

Moreover, because the vast majority of disputes would not be susceptible to class treatment in any event, waiving the right to bring class actions in exchange for these benefits and a stream-lined method of dispute resolution involves essentially no sacrifice at all. Even when a class action can be brought, studies of class action settlements show that few consumers think it is worth the bother to file a claim.[10]

Thus, to declare this exceptionally pro-consumer arbitration provision unconscionable would require a total distortion of what it means for contract terms to be "oppress[ively]" "one-sided"—one that would enable courts to justify striking down virtually any contractual provision that they think has ended up being unfair to one of the contracting parties. That is manifestly not Illinois law—at least not with respect to any contractual provisions other than arbitration provisions. Therefore, Section 2 would preempt any holding that this clause is unconscionable. *See Oblix*, 374 F.3d at 492 ("no state can apply to arbitration (when governed by the Federal Arbitration Act) any novel rule").

**2.** A rule barring class-arbitration waivers is the same thing as a rule requiring arbitration agreements to affirmatively permit class arbitration. But the FAA preempts "state laws applicable only to arbitration provisions." *Doctor's Assocs.*, 517 U.S. at 687. The Supreme Court already has held that a state rule requiring arbitration clauses to be preceded by an under-lined, capitalized notice is preempted by the FAA because that rule did not (and could not) apply to all contractual provisions. *Id.* at 684. Identical logic applies here: A state rule requiring arbitration clauses to authorize a particular procedure—class actions—perforce does not apply to all contractual provisions and therefore runs afoul of Section 2 of the FAA.

**3.** Because state law is preempted whenever it "takes its meaning precisely from the fact that a contract to arbitrate is at issue," courts may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable."

---

[10]    These studies reveal that, when the amount that a consumer can expect to receive is small, the percentage of class members who submit claim forms is very low. *See, e.g.*, James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443, 1445–46 (2005) (noting that redemption rate of class action coupons ranges from one to three percent); Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litiga-tion*, 49 U.C.L.A. L. REV. 991, 1035 (2002) (reporting study of ten consumer class action settlements in which redemption rates varied from 3 to 13.1 percent); Gail Hillebrand & Daniel Torrence, *Claims Pro-cedures in Large Consumer Class Actions and Equitable Distribution of Benefits*, 28 SANTA CLARA L. REV. 747, 753 (1988) (discussing three settlements in which claims rates were 3, 10.5, and 18 percent); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 649–50 (7th Cir. 2006) (noting that only a "paltry three percent" of class members had filed claims under the settlement).

*Perry*, 482 U.S. at 492 n.9.  From this well-established principle, it follows logically that "state law challenges to arbitration agreements cannot be based on unique characteristics of the arbitration process, such as the lack of class relief."  Christopher Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 VAND. L. REV. 729, 776 (2006); *cf. Iberia*, 379 F.3d at 174 ("that certain litigation devices may not be available in an arbitration is part and parcel of  * * *  [the] characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims") (quoting *Gilmer v. Interstate/Johnson Lane Corp.* 500 U.S. 20, 31 (1991)); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (a class waiver is "consistent with the goals of 'simplicity, informality, and expedition' touted by the Supreme Court in *Gilmer*").  Because most waivers of class-wide dispute resolution are contained in arbitration provisions, a state-law rule that invalidates such waivers—like a rule that would deny enforcement to waivers of the right to a jury trial—is a proxy for a rule that broadly invalidates arbitration provisions.  Accordingly, Section 2 of the FAA would expressly preempt such a state-law rule.

**B.    Conflict Preemption.**

Any state-law rule that would preclude ATTM from requiring individual arbitration notwithstanding the unprecedented efforts it has made to provide consumers with incentives to invoke the arbitration process would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objective of Congress" in enacting the FAA and therefore would be preempted under the doctrine of conflict preemption.  *United States v. Locke*, 529 U.S. 89, 109 (2000) (internal quotation marks and citation omitted).  When federal law encourages private parties to engage in or refrain from a certain activity, state laws producing contrary incentives must yield.[11]

That is the case here.  To put it simply, when a business decides whether to include an arbitration provision in its agreements with its customers, it must consider the advantages and dis-

---

[11]    *See*, *e.g.*, *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 157 (1989) (state-law protection of unpatentable inventions was preempted because it "could essentially redirect inventive efforts away from the careful criteria of patentability developed by Congress over the last 200 years"); *Edgar v. MITE Corp.*, 457 U.S. 624, 635 (1982) (holding that federal securities laws preempt state tender offer regulation, which "furnish[ed] incumbent management with a powerful tool to combat tender offers," because "*[t]hese consequences are precisely what Congress determined should be avoided*") (emphasis added); *see also New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995) (ERISA, which has the purpose of promoting regulated plans' flexibility in providing coverage, would preempt a state law that "produce[s] such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage").

advantages of doing so. The advantages of arbitration are that it "saves time, saves trouble, saves money." *Joint Hearings on S. 1005 and H.R. 646 Before the Subcomms. of the Comms. on the Judiciary*, 68th Cong., 1st Sess. 7 (1924) (statement of Charles Bernheimer, N.Y. Chamber of Commerce).[12] The risk is that the arbitrator will render an erroneous decision that will be essentially unreviewable. *See, e.g.*, *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005) (standard for vacating an arbitral award is "among the narrowest known to law"). Many businesses are willing to take that risk because of the cost savings and the desire to have a less adversarial way of resolving disputes with customers.

The calculus changes dramatically, however, if the arbitration provision must allow for class-wide arbitration. To begin with, class-action procedures are inherently irreconcilable with the benefits that arbitration was designed to achieve—speed, simplicity, cost savings, informality, and reduced adversariality. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). As one commentator explains, "the greatest advantages of arbitration are in many instances the greatest disadvantages of litigation, yet class-wide arbitration * * * lessens the distinction between the two processes." Jonathan Bunch, *To Be Announced: Silence from the United States Supreme Court and Disagreement Among Lower Courts Suggest an Uncertain Future for Class-Wide Arbitration*, 2004 J. DISP. RESOL. 259, 272; *accord* Linsday R. Androski, Comment, *A Contested Merger: The Intersection of Class Actions and Mandatory Arbitration Clauses*, 2003 U. CHI. LEGAL F. 631, 649 (class arbitration "subjects arbitration to the very judicial burden that the contracting parties sought to avoid through arbitration").

Moreover, while the stakes of a class arbitration are exponentially higher than those of an individual arbitration, any class-wide arbitral award would remain reviewable only for fraud, bias, or "manifest disregard" of the law. *See* 9 U.S.C. § 10; *Wilko v. Swan*, 346 U.S. 427, 436-37 (1953), *overruled on other grounds by Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268–69 (7th Cir. 2006). No business could afford to subject itself to the risk that an arbitrator subject to only very limited judicial review—and thus only loosely bound by substantive rules of law—would render a massive class award. *See* Tr. of Oral Argument, *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (observation of one Justice that "[y]ou might not want to put your company's entire future in the hands

---

[12]     As the Supreme Court has observed, these "advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995).

of one arbitrator"), *available at* 2003 WL 1989562, at *29.

In short, the inevitable consequence of conditioning the enforcement of consumer arbitration provisions on the availability of class-wide arbitration is that "businesses * * * [would] be strongly discouraged from using arbitration provisions" in their contracts with consumers. *Blitz v. AT&T Wireless Servs., Inc.*, No. 054-00281, slip. op. at 6 (Mo. Cir. Ct. Nov. 28, 2005) (attached as Exhibit 3). Nothing could more clearly "frustrate the purpose" (*Livadas v. Bradshaw*, 512 U.S. 107, 116 (1994)) of the FAA. Accordingly, under the doctrine of conflict preemption, "the Supremacy Clause of the Federal Constitution * * * preclude[s] [a court] from invalidating an arbitration agreement otherwise enforceable under the FAA simply because a plaintiff cannot maintain a class action." *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 365 (Tenn. Ct. App. 2001); *accord Schultz v. AT&T Wireless Servs., Inc.*, 376 F. Supp. 2d 685, 691 (N.D. W. Va. 2005).[13]

## CONCLUSION

The Court should grant ATTM's motion to compel arbitration, and dismiss all claims in this action against ATTM.[14]

---

[13]     The Ninth Circuit recently—and incorrectly—rejected a similar conflict preemption argument. *Shroyer v. New Cingular Wireless Services, Inc.*, 2007 WL 2332068 (9th Cir. Aug. 17, 2007). The Ninth Circuit held that the defendant in that case, a predecessor to ATTM, was required to show affirmatively that businesses would indeed abandon arbitration, in order for conflict preemption to apply. *Id.* at *15. To the contrary, courts—out of necessity—consistently engage in a predictive exercise when determining whether a state law will operate to frustrate the purposes and goals of Congress. *See, e.g., Bonito Boats*, 489 U.S. at 161 (finding conflict preemption where state law ***could*** pose a substantial threat to the patent system's ability to accomplish its mission of promoting progress in the useful arts," and refusing to dismiss the conflict as a "hypothetical * * * possibility") (emphasis added).

    To the extent that Trujillo may attempt to rely on *Kinkel* for the proposition that the FAA does not preempt Illinois unconscionability law, such reliance would be misplaced. First, "[a] federal district court is, of course, not bound by a state court's rulings on matters of federal law." *Calvin v. Sheriff of Will County*, 405 F. Supp. 2d 933, 940 (N.D. Ill. 2005); *see also, e.g., RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). Second, *Kinkel* is incorrect on this point. That court improperly construed Section 2 as forbidding only expressly arbitration-specific unconscionability rules (857 N.E.2d at 261–62), thus failing to recognize that it also preempts attempts to accomplish the same end indirectly. And the *Kinkel* court rejected ATTM's conflict-preemption argument on the mistaken ground that ATTM was required to show that Congress intended to favor individual arbitration over class arbitration. *Id.* at 262. The *Kinkel* court also misread the Supreme Court's holding in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), as an endorsement of class arbitration. *See* 857 N.E.2d at 262. To the contrary, *Bazzle* held merely that arbitrators rather than courts should determine in the first instance whether an ambiguous arbitration provision permits class arbitration.

[14]     *See Deputy v. Lehman Bros., Inc.*, 374 F. Supp. 2d 695, 711 (E.D. Wis. 2005) ("A court may dismiss a case if all of the issues raised before it are arbitrable."); *accord, e.g., Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the is-

Dated: October 16, 2007

Respectfully submitted,

/s Sarah E. Reynolds

Victoria Collado
Sarah E. Reynolds
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Tel: (312) 782-0600
Fax: (312) 701-7711

Evan M. Tager
        (application for *pro hac vice* pending)
Archis A. Parasharami
        (application for *pro hac vice* pending)
Kevin Ranlett (*pro hac vice*)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
Tel: (202) 263-3000

*Counsel for Defendant AT&T Mobility LLC*

---

sues raised in the district court must be submitted to arbitration.") (emphasis omitted).

## CERTIFICATE OF SERVICE

I, Sarah E. Reynolds, an attorney, hereby certify that a true and correct copy of **Memorandum of Law in Support of Defendant AT&T Mobility LLC's Motion to Compel Arbitration and Dismiss Action** was served on the following counsel of record via electronic delivery on October 16, 2007.

Larry D. Drury
James Rowe
LARRY D. DRURY, LTD.
205 West Randolph, #1403
Chicago, IL  60603
(312) 346-7950

Patrick T. Stanton
Edward S. Weil
SCHWARTZ COOPER CHARTERED
180 North LaSalle Street, Suite 2700
Chicago, Illinois 60601

Penelope A. Preovolos
Andrew D. Muhlbach
Johanna W. Roberts
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105

Respectfully submitted,

/s/Sarah E. Reynolds

Dated: October 16, 2007                    *Attorney for Defendant AT&T Mobility LLC*