# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| JOSE TRUJILLO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE COMPUTER, INC., a California Corporation, and AT&T MOBILITY LLC, a Georgia Corporation,<br><br>Defendants. | Case No. 1:07-cv-04946<br><br>DECLARATION OF NEAL S. BERINHOUT IN SUPPORT OF AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS ACTION |
|---|---|

I, Neal S. Berinhout, hereby declare as follows:

1.      I am employed by AT&T Mobility LLC ("ATTM") (formerly Cingular Wireless LLC ("Cingular")) as Associate General Counsel — Litigation. In that position, I have been involved with reviewing the contracts used by ATTM for the provision of wireless services. I am familiar with ATTM's procedures for archiving, retaining, and retrieving true and correct copies of contracts between ATTM and its customers.

2.      The following facts are of my own personal knowledge, and if called as a witness I could and would testify competently as to their truth.

**Corporate Background**

3.      Cingular Wireless LLC was renamed AT&T Mobility LLC on January 8, 2007.

**Service Agreements**

4.      As a condition of obtaining wireless service from ATTM and activating wireless phones for use with ATTM's network, customers must agree to an ATTM Wireless Service Agreement that sets forth or incorporates by reference the terms and conditions of service.

5.      In the regular and ordinary course of business, ATTM maintains records that contain information relevant to its customers' accounts.

6.      At my direction, employees of ATTM have retrieved records relating to the

---

Declaration of Neal S. Berinhout in Support of AT&T Mobility
LLC's Motion to Compel Arbitration and Dismiss Action

Dockets.Justia.com

account of Plaintiff Jose Trujillo.

7. According to ATTM's records, Mr. Trujillo, purchased an iPhone at a retail store and then activated wireless service online using the iTunes program on his iPhone on July 5, 2007.

8. In the course of purchasing an iPhone from a retail store, customers also receive an iPhone rate plan brochure and a separate document summarizing the activation process, available rate plans, and the return policy. True and correct copies of those documents are attached as Exhibits 1 and 2.

9. The ATTM Terms of Service booklet, which contains the terms and conditions of wireless service, is also available in the store and online by going to http://www.wireless.att.com and clicking on "Wireless Service Agreement" at the bottom of the web page. A true and correct copy of the Terms of Service in effect at the time that Mr. Trujillo purchased his iPhone is attached as Exhibit 3.

10. Customers activate their iPhones for use with ATTM's network online by using the iTunes program. In order to complete the activation process, a customer must check a box that states: "I have read and agree to the AT&T Service Agreement." The service agreement—including the terms of service—is provided in a text box immediately above the box that the customer checks to acknowledge his or her acceptance of the agreement. If the customer does not check the box stating "I have read and agree to the AT&T Service Agreement," the customer is not permitted to activate his or her iPhone for use with ATTM's network. A true and correct copy of screenshots of the iTunes activation process is attached as Exhibit 4.

11. After the customer has activated the iPhone, ATTM sends the customer a copy of his or her agreement, which includes the rate plan terms that the customer has selected and incorporates by reference the ATTM Terms of Service booklet then in effect. ATTM includes a copy of the applicable Terms of Service booklet with the agreement; the booklet reproduces the terms of service that the customer accepted when he or she activated the iPhone.

## Arbitration Agreements

12. The arbitration provision in Mr. Trujillo's service agreement was designed to make arbitration as attractive and convenient as possible for ATTM's customers. In creating the provision, ATTM (then Cingular) consulted with several experts, including Professor Richard A. Nagareda, a professor at Vanderbilt University Law School whose scholarship focuses on aggregate dispute resolution.

13. The features of ATTM's arbitration provision are explained on ATTM's web site at http://www.att.com/disputeresolution and http://www.att.com/arbitration-information. The web page at http://www.att.com/arbitration-information provides information designed to explain the arbitration process to non-lawyers. True and correct copies of those documents are attached as Exhibits 5 and 6.

14. Customers also may download from ATTM's website all of the necessary paperwork for initiating an arbitration. ATTM has prepared a Notice of Dispute form that customers may use to notify ATTM of their intention to commence arbitration as well as a Demand for Arbitration form that customers may fill out and send to the AAA to begin the arbitral process (http://www.att.com/arbitration-forms). True and correct copies of those forms are attached as Exhibits 7 and 8.

15. ATTM's arbitration provision specifies that any arbitrations will be conducted under the American Arbitration Association ("AAA") Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes, as modified by the arbitration provision. True and correct copies of the AAA Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes are attached as Exhibits 9 and 10.

16. Many disputes between ATTM and its customers are resolved by means of a call or e-mail to ATTM's customer care department, which is known at ATTM as the Office of the President, making it unnecessary for the customer to file a Notice of Dispute. I have instructed personnel in the Office of the President to contact the legal department (and me in particular)

whenever they become aware of a pattern of similar complaints so that I can review the complaints and determine whether any changes to ATTM's practices are necessary.

17. One way to measure how successful ATTM's customer care representatives are at resolving customer concerns and complaints is to determine the dollar value of credits "manually added" to customer accounts in response to the concerns and complaints. In August 2007, the most recent month for which data are available, ATTM representatives provided about $113 million in manual credits. For the 12-month period ending in August 2007, ATTM representatives dispensed over $1 billion in manual credits.

18. The cost of acquiring a new customer is quite high, averaging several hundred dollars. This cost includes various marketing and administrative expenses and the cost of subsidizing the new customer's wireless phone. Because of the high cost of acquiring a new customer, and for other reasons, ATTM generally attempts to accommodate customers who have complaints in order to retain them as customers. One of the most important metrics by which ATTM and other wireless carriers measure their success is customer "churn," which is the monthly rate at which customers terminate their relationships with the carrier. By reasonably accommodating customers who have complaints, ATTM may reduce its churn.

19. Under ATTM's current arbitration provision and under previous provisions, customers who seek to arbitrate their disputes are required to send ATTM a Notice of Dispute.

20. ATTM is often able to resolve customers' disputes to their satisfaction shortly after receiving the Notice of the Dispute, thus obviating the need for the customer to commence the arbitration.

21. Between January 1, 2007 and August 20, 2007, ATTM received over 450 Notice of Dispute and Arbitration Initiation forms from its customers.

22. In contrast, over that same time period, fewer than 20 consumer class actions have been brought against ATTM.

23. Under ATTM's current arbitration provision and the provision that it replaced, subscribers have the option of bringing claims against ATTM in small claims court rather than in

arbitration. In 2005 and 2006, about 850 such claims were brought against ATTM nationwide. The vast majority of small-claims-court actions against ATTM settled before judgment. While many of those claims either were settled or resulted in judgments for amounts exceeding $1,000, many subscribers have successfully vindicated claims for small dollar amounts.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 16, 2007.

*/s/ Neal S. Berinhout*
Neal S. Berinhout

---

5

Declaration of Neal S. Berinhout in Support of AT&T Mobility
LLC's Motion to Compel Arbitration and Dismiss Action