### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSE TRUJILLO, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) | No.    07 CV 04946 |
| | ) | Judge Kennelly |
| V | ) | Mag. Judge Ashman |
| | ) | |
| APPLE COMPUTER, INC., a California Corporation, and AT&T MOBILITY LLC, a Georgia Corporation, | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS ACTION

NOW COMES the Plaintiff, JOSE TRUJILLO,  on behalf of himself and all others

similarly situated, by and through his attorneys, LARRY D. DRURY, LTD., and in response to

*Defendant AT&T Mobility LLC's Motion to Compel Arbitration and Dismiss,* states as follows:

### INTRODUCTION

Plaintiff filed this action on behalf of himself and a putative class of other AT&T

Mobility, LLC ("AT&T") and Apple Computer, Inc., ("Apple") customers, challenging the

Defendants' purposeful and fraudulent concealment to purchasers of the iPhone cellular

telephone of the terms and conditions of Defendants' battery replacement program.  In his First

Amended Class Action Complaint ("Complaint"), Plaintiff alleges that Defendants' actions in

fraudulently concealing said terms and conditions violates the Illinois Consumer Fraud and

Deceptive Business Practices Act (the "Consumer Fraud Act"), and constitutes a breach of

contract and implied warranties, all resulting in Defendants' unjust enrichment to the tune of

millions if not billions of dollars.  Defendant AT&T filed it's Answer to Plaintiff's Complaint,

and thereafter filed this *Motion to Compel Arbitration and Dismiss*, relying on its on-line

1

Dockets.Justia.com

arbitration provision.  For the following reasons, Defendant's Motion should be denied.

## ARGUMENT

The issue presented to this Court is whether Defendant, AT&T Mobility, LLC, ("AT&T") may compel arbitration, while at the same time prohibiting all class arbitration, with its customers through its cellular telephone service agreement.  Oddly enough this Defendant, formerly known as Cingular Wireless, LLC, saw its earlier version of this arbitration agreement and class-action waiver (upon which it now again relies) struck down in the landmark case of *Kinkel v. Cingular Wireless* where the court found its arbitration agreement to be both substantively and procedurally unconscionable. *Kinkel v. Cingular Wireless, LLC,* 857 N.E.2d 250 (Ill. 2006).  Clearly, the Defendant has not learned from its mistakes.  Although Defendant now claims that it has "remedied" the earlier court's concerns, it has not.

Defendant's arbitration clause still prevents a consumer from seeking redress on a class basis, and thus redress of any sort where the costs of arbitration would far outweigh the prospective benefits.  In fact, the only change to Defendant's newest unconscionable arbitration agreement is Defendant's promise to pay the filing fee for initiating arbitration, a pitiful $125.00[1].  This is a far cry from remedying the court's concerns as expressed in *Kinkel* only a year ago.  Plaintiff's Complaint demonstrates that not only has Defendant failed to remedy its arbitration agreement, but has also failed to remedy its business practices.  For these reasons, and those annunciated below, this Court should deny Defendant's latest attempt to avoid liability for its fraudulent conduct by denying its Motion.

Defendant's Motion must fail because (1) section 2 of the FAA does not preempt

---

[1]    Defendant argues that it has agreed to pay all costs of arbitration; however, that only applies to actions brought pursuant to Defendant's own notice requirements. *See* p. 15-16 of Exhibit 4 to Defendant's Motion.

application of general contract principles to Defendant's class arbitration provision; and (2) Defendant's Arbitration Clause and Class Action Waiver are facially invalid and unconscionable, and thus unenforceable.

## I.     Section 2 of the FAA Does Not Preempt Application of General Contract Principles to Defendant's Class Arbitration Provision

Defendant argues that any finding of unconscionability would be preempted by and run afoul of the purposes of the FAA. To support its argument, Defendant spends several pages reiterating arguments that it made earlier in its Motion, i.e., contemplating reasons why a reasonable consumer might accept a class-action prohibition in an arbitration provision, why a consumer may prefer arbitration, etc. Defendant then goes on to discuss why class action procedures are antithetical to the purposes of the FAA, and why a business may not want to put its company's entire future in the hands of one arbitrator. Citing to only a few cases, Defendant instead relies largely on opinions from various commentators, polls, and its own suppositions and speculation. All of this is irrelevant to and obfuscates the well-established test for preemption found in Section 2 of the FAA and the simple purpose of Section 2. Indeed, of the nearly five pages of argument relating to preemption, Defendant spends little space and cites to few cases regarding the only relevant issue of preemption under the FAA: how courts have interpreted the test for preemption found in Section 2 of the FAA. A review of Section 2 and the cases interpreting it reveals that this Court's anticipated finding, that Defendant's arbitration provision and class action waiver is unconscionable, is not preempted by the FAA, but rather is consistent with its express provisions and purposes.

The FAA contains no express preemption provision and does not demonstrate a congressional intent to occupy the entire field of arbitration. *Volt Info. Sciences, Inc. v. Bd. of*

*Leland Trustees of Stanford Univ.,* 489 U.S. 468, 477 (1989).  Rather, the basic purpose of the FAA is to preclude states from singling out arbitration provisions as suspect, requiring instead that arbitration agreements be put upon the same footing as any other contract. *Volt Info. Sciences*, 489 U.S. at 474.  Thus, a state court is not preempted from questioning the validity of an arbitration provision in a contract merely because of the existence of the FAA.

Indeed, Section 2 of the FAA confers upon States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration clause. *Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265,281 (1995).  It provides, in relevant part, that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. Sec.2.  Under Section 2, States may regulate contracts, including arbitration clauses, under general contract law principles, and they may invalidate an arbitration clause upon the same grounds as exist for the revocation of any contract. *Allied-Bruce Terminix Co.,* 513 U.S. at 281.  As the court ruled in *Eassa Props. v. Shearson Lehman Bros., Inc.,* 851 F.2d 1301, 1304 (11th Cir. 1988), although federal law applies to the interpretation and enforcement of a **valid** arbitration agreement, general state law contract principles govern whether such an agreement is even valid and exists in the first place.  *See* also *Chan v. Drexel Burnham Lambert, Inc.,* 223 Cal. Rptr. 838, 842-843 (2d Dist. 1986)(finding that the FAA dictates the effect of a contractually agreed-upon arbitration on a given dispute, but it does not displace state law on the general principles governing the formation of the contract itself.)  Thus, a state-law principle concerning the validity, enforceability and revocability of contracts generally applies to an arbitration clause just as it would any other contractual provision.

4

Moreover, because arbitration is a contractual matter, a party cannot be required to subject his suit to arbitration when he has not agreed to do so. *Eassa Prop.,* 851 F.2d at 1304, n.7. Indeed, the U.S. Supreme Court has found that a party can be forced to arbitrate "only if he or she has in fact entered into a valid, enforceable contract waiving his or her right to a judicial forum." *Zobrist v. Verizon Wireless*, 354 Ill.App.3d 1139, 1143 (1st Dist. 2004). Whether the parties have, in fact, agreed to arbitration is determined under state-law contract principles. *See, e.g., Zobrist*, 354 Ill.App.3d at 1143. The FAA does not apply to a dispute until the arbitration provision at issue is determined to be part of the parties' contract. *Chan*, 223 Cal.Rptr. at 842-843. If a party challenges an arbitration provision on grounds such as unconscionability, the court determines its validity before submitting the remainder of the parties' dispute to arbitration. *Taylor v. Butler*, 142 S.W.3d 277, 283-284 (Tenn. 2004)(citing *Burden v. Check into Cash of KY, LLC*, 267 F.3d 483 (6th Cir. 2001); *N&D Fashions, Inc. V. DHJ Indus., Inc.,* 548 F.2d 722 (8th Cir. 1977); *Am. Safety Equip. Corp. v. JP Maguire Co.,* 391 F.2d 821 (2d Cir. 1968); *Hart v. McChristian*, 42 S.W.3d 552 (Ark. 2001); *Simpson v. Cohen*, 812 So. 2d 588 (Fla. App. 2002)).

The only thing that States cannot do is invalidate arbitration agreements on the basis of state laws that are only applicable to arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996). This kind of policy is prohibited simply because it would put arbitration provisions on unequal footing with the other terms of a given contract, in contravention of the FAA's language and intent. *Allied-Bruce Terminix Co.,* 513 U.S. at 281. For example, in *Casarotto*, a case cited by Defendant, a Montana statute conditioned the enforceability of arbitration agreements on compliance with a special notice requirement that any arbitration clause be printed in underlined capital letters on the first page of any agreement. *Casarotto*, 517 U.S. at 684. The Court there found that the special notice requirement of the

5

statute was not applicable to contracts generally, but only to arbitration agreements.  *Id.* at 688.

The Court held that the notice requirement was preempted by Section 2 of the FAA, and that the

FAA displaced the Montana statute with respect to arbitration agreements subject to the FAA.

*Id.*  Plaintiff requests no such finding here, and no such circumstances are present here.  In this

case, the court is merely asked to apply general state-law principles of unconscionability, not to

condition the enforceability of the arbitration agreement on compliance with any requirement not

applicable to contracts generally.  Contrary to Defendant's argument, Section 2 of the FAA does

not preempt this Court from finding Defendant's arbitration agreement, and specifically the class

arbitration prohibition, unconscionable.

II.     **The Arbitration Clause and Class Action Waiver are Facially Invalid and
        Unconscionable, and thus Unenforceable**

        A.      The Federal Arbitration Act

        The Federal Arbitration Act (FAA), 9 U.S.C. §2, mandates enforcement of valid,

written arbitration agreements.  *Tinder v. Pinkerton Security*, 305 F.3d 728, 733 (7th Cir. 2002).

By enacting the FAA, Congress declared a national policy favoring arbitration.  *Perry v. Thomas,*

482 U.S. 483, 489 (1987).

        As a matter of federal policy there is a presumption of arbitrability when a

contract contains an arbitration clause. *AT&T Technologies, Inc. v. Communications Workers of

America*, 475 U.S. 643, 651 (1986).  Nonetheless, the enforceability of an arbitration agreement

is determined by state contract law,  *Tinder*, 305 F.3d at 733, and "generally applicable contract

defenses such as fraud, duress, or unconscionability, may be applied to invalidate arbitration

agreements without contravening §2." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687

(1996).  As the Supreme Court has cautioned, courts must "remain attuned to well-supported

claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 (1985).

The validity of an arbitration clause is a threshold issue to be determined by a court. *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 451-53 (2003). Likewise, whether a contract created a duty for the parties to arbitrate a dispute is a question courts usually decide, unless the parties clearly and unmistakably provide otherwise. *S+l+H S.P.S., Viale F Cassani 15 24047 Treviglio, Italy v. Miller-St. Nazianz, Inc.,* 988 F.2d 1518, 1523 (7th Cir. 1993). The party resisting arbitration bears the burden of establishing the arbitration clause is invalid or the claims at issue are unsuitable for arbitration. *Green Tree Fin. Corp-Ala. v. Randolph*, 531 U.S. 79,91 (2000).

B.    <u>The AT&T MOBILITY LLC Arbitration Clause</u>

Defendant attaches to its Motion the Declaration of Kevin Ranlett, in which Mr. Ranlett states that Plaintiff could have selected alternative wireless service carriers, such as *Virgin Mobile* and/or *PowerNet Mobile*, whose terms of service contracts do not contain an arbitration clause. In fact, Plaintiff could not select another service provider because AT&T is the only licensed provider of cellular services for the Apple iPhone, and Plaintiff had no choice but to select AT&T as his cellular phone company after purchasing his iPhone. Additionally, because Defendant only permits its customers sign up for cellular service **after having already purchased the iPhone,** Plaintiff had no meaningful alternative; had Plaintiff not selected AT&T as his service provider, his already purchased iPhone would have been useless. Ranlett's declaration to the contrary is pure folly.

After purchasing his iPhone, Plaintiff was required to activate his phone service via

AT&T's website. The AT&T Service Agreement ("Agreement"), upon which Defendant relies, appeared on-line at Defendant's website at the time Plaintiff activated his telephone, but was hidden among twenty-plus pages of small print in a text box measuring no more than a few inches in height and width. Exhibit 4 of Defendant's Motion is the twenty-page printout of its Agreement. Exhibit 5 of Defendant's Motion demonstrates how Defendant crammed its twenty page, small print Agreement into the online text box. In fact, the online text box is so small, one can only see a few lines of the Agreement at a time, making it difficult to read and understand. *See* p. 7 of Exhibit 5 to Defendant's Motion. As the Illinois Appellate Court, Fifth District, stated in its ruling in *Kinkel* regarding this Defendant's prior arbitration clause, "words simply cannot adequately portray the onerous undertaking that would be involved if a consumer attempted to read the entire agreement." That Appellate Court made such a finding based on Defendant's clause that existed on the back of the consumer's **typed paper contract** - here we have no such paper contract, but instead have only a maze of online text that one can read only a few lines at a time.

Among the hidden, small-print online Agreement is Defendant's relied upon arbitration clause which reads, in part, as follows:

> "You and AT&T agree that each may bring claims against the other only in your or its individual capacity, and not as a Plaintiff or Class member in any purported class or representative proceeding." *See* p.15 of Exhibit 4 of Defendant's Motion.

C.    The Clause is Substantively Unconscionable

At first blush, the Agreement arguably allows either party to invoke arbitration and hence appears on its face to be supported by consideration. Upon closer analysis, however, the clause is not supported by consideration because under it Defendant gives up no rights while Plaintiff must forgo not only a judicial forum for dispute resolution but any right to class action

remedies and the right to trial by jury.

The Federal Arbitration Act provides that an arbitration provision that is unconscionable under the common law of contracts is unenforceable. *See* 9 U.S.C. §1, et seq. The *Kinkel* court adopted this definition of substantive unconscionability:

> "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly suprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity."

*Kinkel,* 223 Ill.2d at 28. Defendant's arbitration clause is unconscionable because it recasts the legal relationship between Defendant and its customers in a way that shields Defendant from liability under Federal and State consumer protection statutes, and from having to defend suits in court. Further, it bars class actions. In fact, Defendant's arbitration provision and its class action waiver entirely foreclose the ability of a consumer to bring a claim on behalf of a class in any forum, including arbitration. While Defendant may argue that the waiver applies equally to both parties, as the court ruled in *Kinkel v. Cingular Wireless, LLC*[2] such a "limitation applies, in practice, **only to prevent customers from seeking redress** for relatively small amounts of money." 857 N.E.2d 250 (Ill. 2006)(emphasis added). Here again, it accomplishes that same goal: denies consumers from seeking redress for Defendant's fraudulent actions. Because it deprives consumers of these protections guaranteed to them by federal and state consumer protection laws, as well as the common law, the arbitration clause is an unenforceable, unconscionable contract.

---

[2]     Defendant AT&T Mobility, LLC, formerly known as Cingular Wireless, was the defendant in *Kinkel v. Cingular Wireless, LLC*, an action in which the court struck down its arbitration clause and class action waiver finding it to be unconscionable, and thus invalid.

An arbitration clause materially identical to the one at issue here was held substantively unconscionable in *Luna v. Household Finance Corp.* 236 F.Supp.2d 1166 (W.D. Wa. 2002). Among the factors that the *Luna* court found to support a finding of substantive unconscionability was the bar on class actions. The *Luna* court quoted *Mendez v. Palm Harbor Homes, Inc,* in ruling that:

> "Avoiding the public court system to save time and money is a laudable societal goal. But avoiding the public court system in a way that effectively denies citizens access to resolving everyday societal disputes is unconscionable. **Goals favoring arbitration of civil disputes must not be used to work oppression.** When the goals given in support of contract clauses like this are used as a sword to strike down access to justice instead of as a shield against prohibitive costs, we must defer to the overriding principle of access to justice." *Id.* At 1179 (emphasis added).

The *Mendez* court held an arbitration clause unconscionable and thus unenforceable where the plaintiff would have to spend over $2,000.00 to vindicate his rights in the $1,500.00 dispute. *Mendez*, 111 Wn. App. 446, 465 (2002). While Defendant's arbitration clause provides for the payment of Plaintiff's **filing fee**, it makes no mention of the other costs of arbitration, similar to the agreement in *Mendez* and in *Phillips v. Associates Home Equity Servs.,* 179 F.Supp 2d 840, 846 (N.D. Ill.2001). In *Phillips*, the court found that **the initial filing fee is only the beginning of the costs involved in arbitration** and the American Arbitration Association's commercial rules contain no safeguards to protect consumers against incurring exorbitant costs. *Id.* at 846 (emphasis added). *See also Green Tree Financial Corp. v. Randolph*, 531 U.S. 79,90 (2000) ("the existence of large arbitration costs preclude a litigant such as Randolph from effectively vindicating her statutory rights in the arbitral forum").

The dispositive issue in the *Luna, Mendez,* and *Phillips* cases cited above is the same issue that this Court must decide - i.e., whether there is an enforceable arbitration

agreement[3]. These are not isolated decisions. Both federal and state courts have refused to enforce arbitration agreements that severely limit or extinguish the rights of consumers. In *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003), the court affirmed the district court's finding that AT&T's arbitration provision was unconscionable and thus unenforceable because it shielded AT&T from liability by imposing legal remedies provisions that eliminated class actions and placed significant financial hurdles in the path of potential plaintiffs. *Id.* at 939.

While a number of state and federal courts have enforced class action waivers and found them not unconscionable, an ever-growing number of courts have found that a waiver of class-wide relief is a significant factor (and in at least one instance a determinative factor) in invalidating an arbitration provision as unconscionable. These courts have recognized that the availability of class-wide relief is often the only means of vindicating consumer rights. *See*, e.g., *Discover Bank v. Superior Court,* 36 Cal.4th 148 (2005) ("[C]lass actions and arbitrations are, particularly in the consumer context, often inextricably linked to the vindication of substantive rights.") *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 (2002) ("In many cases, the availability of class action relief is a sine qua non to permit the adequate vindication of consumer rights.") This is particularly so when the damages involved are comparatively small for each individual consumer, as may be the case here. *Muhammad v. County Bank*, 189 N.J. 1, 912 A.2d 88 (2006). Moreover, without the availability of a class-wide mechanism, many consumers may never realize that they have been wronged because they may not know that the defendant's conduct is illegal. *Id.* 912 A.2d at 100. In addition, the prospect of class-wide relief "ordinarily has some deterrent effect on a manufacturer or service provider.*" Powertel Inc. v. Bexley,* 743

---

[3]    By its own terms, Defendant's arbitration clause will be null and void in the event that this Court finds the class action waiver to be unenforceable. *See* p.17, ¶6 of Exhibit 4 of Defendant's Motion.

So.2d 570 (Fla.Dist.Ct.App.1999), but any such effect is eviscerated by arbitration clauses like Defendant's if it is allowed to stand.

While Defendant may maintain that its provision that Plaintiff is free to bring his claim as a small claims action in arbitration is significant toward providing relief, it is not. Defendant therein assumes that attorneys are willing to take small claims cases for plaintiffs on an individual basis, or that plaintiffs are able to effectively represent themselves in arbitration proceedings against multibillion dollar national corporations such as Defendant.

Also relevant to the courts inquiry in this type of case is the nature of the claim. *Kinkel v. Cingular Wireless, LLC,* 857 N.E.2d 250 (Ill.2006). While some claims are obvious to the typical consumer such that they can potentially make his or her case in arbitration without the assistance of an attorney, other claims such as the ones involved here are not likely to be recognized. The typical consumer cannot be expected to know that Defendant's work in concert with Apple to conceal hidden charges for its Program is unlawful and violates consumer protection laws. In such a circumstance, "the typical consumer may feel that such a charge is unfair, but only with the aid of an attorney will the consumer be aware that he or she may have a claim that is supported by law, and only with the aid of an attorney will such a consumer be able to make the merits of such a claim apparent." *Id.* When considering the cost-price disparity factor, as annunciated above, the court must consider that the cost to Plaintiff of attempting to vindicate this claim, in the absence of the ability to bring a class claim, would be his costs plus attorney fees. As a result, if Plaintiff in this case were to prevail on the merits of his individual claim, he may not be made whole as the cost most likely would exceed the award. Further, should Plaintiff obtain a remedy in this case on an individual rather than class basis it would only pertain to Plaintiff and have no *res judicata* or collateral estoppel effect upon the putative class.

12

Defendant would simply be able to continue this unfair practice of charging its customers hidden fees under its Program, because any customer who challenges it is certain to lose even when they have won.  For those customers who cannot afford to challenge the Defendant's actions and rather opt to cancel its service with Defendant, they would be charged a termination fee of $175.00 per Defendant's own terms of service.  This means that, absent class-wide relief, customers are left with two equally unfair options: (1) pay Defendants the hidden $85.95 fee under the Program that Defendants concealed from its consumers; or (2) pay Defendant the termination fee of $175.00 to avoid paying Defendants the concealed fee of $85.95.  Under either option offered by this substantively unconscionable Agreement, the consumer bears the loss and Defendant gains the profit.

D.    The Clause is Procedurally Unconscionable

Defendant's arbitration agreement is procedurally unconscionable as well.  Under Illinois law, "[p]rocedural unconscionability refers to a situation where a term is so difficult to find, read or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it..." *Kinkel v. Cingular Wireless LLC,* 223 Ill.2d 1, 22 (2006).  This analysis takes into account the disparity in bargaining power between the drafter of the contract and the party arguing that it is unconscionable. *Id.*  In *Kinkel*, the court delineated a number of factors to consider when assessing procedural unconscionability, including "the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Id.* Illinois courts have long found provisions offered on a take-it-or-leave-it basis and also 'hidden in a maze of fine print' to be procedurally unconscionable. *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.,* 86 Ill.App.3d 980, 989-90 (1st Dist. 1980).

As previously stated herein, Defendant's arbitration clause and class-action waiver, and in fact its entire *Terms of Service*, were offered on a take-it-or-leave-it basis. Plaintiff could not discover these terms, or even begin the process of subscribing for cellular service with Defendant, until he had already purchased the iPhone. Defendant's own exhibit to its Motion (Defendant's Exhibit No. 5) demonstrates that before arriving at the on-line web page containing its *AT&T Service Agreement* (page 7 of Defendant's Exhibit No. 5)*,* the Plaintiff would have to first enter his wireless account information, i.e., phone number, etc., (page 5 of Defendant's Exhibit No. 5) which would require him to have already purchased the iPhone. Further, because Defendant was the sole licensed provider of cellular service for the iPhone, Plaintiff had no choice but to accept Defendant's unconscionable terms of service.

In addition to being offered on a take-it-or-leave-it basis, the terms of Defendant's arbitration clause was hidden in a maze of fine print. Defendant argues in its Motion that Plaintiff had access to the clause, but ignores the fact that the clause was concealed. Even if Plaintiff had "access" to the clause, how could he ever know where to look for it among some twenty pages that were crammed into a small print online text box that is so small one can only see a few lines of the Agreement at a time. *See* p. 7 of Exhibit 5 to Defendant's Motion. Regardless, mere "access" is not the standard to which Defendant must adhere, and the fact that a contract term is literally "accessible" has no bearing on whether it is hidden (in a maze of fine print or otherwise) for purposes of determining unconscionability under Illinois law. For example, the plaintiff in *Frank's* clearly had access to the offending contractual clause where the clause was contained among other conditions on the reverse side of the acknowledgement. 86 Ill.App.3d at 991-92. Similarly, in *Razor*, the plaintiff had access to the limited warranty and the disclaimer of consequential damages because it was located in her owner's manual. 2006 WL

240746 at *13.  In both cases, the fact that the plaintiffs could have, in a literal sense, located and read the offending contractual provision did not prevent the courts from concluding that the provision was sufficiently hidden to warrant a finding of procedural unconscionability.  The holdings of *Frank's* and *Razor* are simply a recognition of the fact that a merchant offering a take-it-or-leave-it contract that it has drafted has many ways to hide onerous terms without entirely denying the consumer any access to the provision at all.  The same holds true here - even if Plaintiff had "ready access" to Defendant's arbitration clause and class action waiver, that point hardly undermines the fact that the provision was hidden in the online text box in the manner described above.

As the Illinois Supreme Court stated in *Razor* and *Kinkel*, "procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it."  2006 WL 240746 at *13.  The positioning of the key provisions of Defendant's arbitration clause and class waiver among some twenty pages, crammed into a small print online text box that is so small one can only see a few lines of the Agreement at a time, makes it abundantly clear that Defendant had no fair opportunity to find, let alone read and agree to, said terms.  The foregoing reasons, and the fact that the terms were clearly offered on a take-it-or-leave-it basis, support a finding of procedural unconscionability.

WHEREFORE, Plaintiff prays that this Court deny Defendant's Motion.  Further, Plaintiff requests oral argument on said Motion.

Jose Trujillo, individually
and on behalf of all others similarly
situated,

Dated: December 18, 2007                    By: _____/s/ James Rowe_____
                                                  LARRY D. DRURY
                                                   JAMES R. ROWE
                                              LARRY D. DRURY, LTD.
                                                205 WEST RANDOLPH
                                                        SUITE 1430
                                                  CHICAGO, IL 60606
                                                     312/346-7950

16