## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| JOSE TRUJILLO, an individual, on behalf of himself and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>APPLE COMPUTER, INC., a California Corporation, and AT&T MOBILITY LLC, a Georgia Corporation, )<br><br>Defendants. ) | Civil Case No. 1:07-cv-04946<br><br>Hon. Matthew F. Kennelly<br>(Oral Argument Requested) |

---

## REPLY BRIEF IN SUPPORT OF DEFENDANT AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS ACTION

---

Dated: January 11, 2008

Victoria Collado
Sarah E. Reynolds
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711

Evan M. Tager (*pro hac vice*)
Archis A. Parasharami (*pro hac vice*)
Kevin Ranlett (*pro hac vice*)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3000

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ i

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 2

I.    The Class-Arbitration Waiver In Trujillo's Arbitration Agreement Is Not Uncon-
      scionable Under Illinois Law ................................................................................ 2

      A.    Trujillo's Arbitration Agreement Is Not Procedurally Unconscionable ............... 2

      B.    ATTM's Arbitration Provision Is Not Substantively Unconscionable ................ 6

II.   If *Kinkel* Were Construed To Render ATTM's Arbitration Provision Unenforce-
      able, It Would Be Preempted By The FAA ....................................................... 13

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
    6 P.3d 669 (Cal. 2000) ............................................................... 11

*Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002)............................. 13

*Carbajal v. H&R Block Tax Services, Inc.*,
    372 F.3d 903 (7th Cir. 2004) ....................................................... 15

*Carter v. Countrywide Credit Industries, Inc.*,
    362 F.3d 294  (5th Cir. 2004) ...................................................... 11

*Caudle v. American Arbitration Ass'n*, 230 F.3d 920 (7th Cir. 2000)......... 9

*Champ v. Siegel Trading Co.*, 55 F.3d 269 (7th Cir. 1995).................... 9

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).................... 9

*Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005) .............. 10

*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996)........... 5, 13, 14

*Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804  (N.D. Ill. 1999) ........... 8

*Fonte v. AT&T Wireless Services, Inc.*, 903 So. 2d 1019
    (Fla. Dist. Ct. App. 2005), *rev. denied*, 918 So. 2d 292 (Fla. 2005)............ 11

*Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*,
    408 N.E.2d 403 (Ill. App. Ct. 1980) ............................................... 5

*Gay v. CreditInform*, __ F.3d __, 2007 WL 4410362
    (3d Cir. Dec. 19, 2007) ......................................................... 14, 15

*Green Tree Financial Corp.–Alabama v. Randolph*,
    531 U.S. 79 (2000)................................................................. 10

*Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997) ..................... 3

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
    379 F.3d 159 (5th Cir. 2004) ................................................. 4, 5, 14

*James v. McDonald's Corp.*, 417 F.3d 672 (7th Cir. 2005) ...................... 3

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kinkel v. Cingular Wireless LLC*, 828 N.E.2d 812 (Ill. App. Ct. 2005),
  *aff'd*, 857 N.E.2d 250 (Ill. 2006) .................................................................5

*Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250 (Ill. 2006) ........................... *passim*

*Livingston v. Associates Finance, Inc.*, 339 F.3d 553 (7th Cir. 2003)........................... 9

*Luna v. Household Finance Corp. III*, 236 F. Supp. 2d 1166
  (W.D. Wash. 2002) ............................................................................ 10, 11

*Mendez v. Palm Harbor Homes, Inc.*, 45 P.3d 594 (Wash. Ct. App. 2002)................................ 10

*Muhammad v. County Bank of Rehoboth Beach*,
  912 A.2d 88 (N.J. 2006)......................................................................... 10

*Oblix, Inc. v. Winiecki*, 374 F.3d 488 (7th Cir. 2004)................................... 2, 8, 11, 14

*Perry v. Thomas*, 482 U.S. 483 (1987) ................................................................ 15

*Phillips v. Associates Home Equity Services, Inc.*,
  179 F. Supp. 2d 840 (N.D. Ill. 2001) ......................................................... 10

*Pivoris v. TCF Financial Corp.*, 2007 WL 4355040
  (N.D. Ill. Dec. 7, 2007) ........................................................................ 9

*Powertel, Inc. v. Bexley*, 743 So. 2d 570 (Fla. Dist. Ct. App. 1999) ....................... 10, 11

*ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996).......................................... 3

*Razor v. Hyundai Motor America*, 854 N.E.2d 607 (Ill. 2006) .................................... 5

*Schultz v. AT&T Wireless Services, Inc.*, 376 F. Supp. 2d 685
  (N.D. W. Va. 2005)........................................................................... 11, 15

*State ex rel. Dunlap v. Berger*, 567 S.E.2d 265 (W. Va. 2002)............................... 10, 11

*Sydnor v. Conseco Financial Servicing Corp.*, 252 F.3d 302 (4th Cir. 2001)......................... 15

*Ting v. AT&T Corp.*, 319 F.3d 1126 (9th Cir. 2003) ......................................... 10, 11

## STATUTES AND RULES

Federal Arbitration Act, 9 U.S.C. §§ 1–16 ................................................... 1

9 U.S.C. § 2................................................................................ *passim*

Ill. S. Ct. R. 281 ........................................................................ 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

## OTHER AUTHORITIES

Carole J. Buckner, *Due Process in Class Arbitration*, 58 FLA. L. REV. 185 (2006) ....................15

Jean R. Sternlight, *As Mandatory Binding Arbitration Meets the Class Action, Will the Class Action Survive?*, 42 WM. & MARY L. REV. 1 (2000)................................15

Jill E. Fisch, *Class Action Reform, Qui Tam, and the Role of the Plaintiff*, 60 L. & CONTEMP. PROBS. 167 (1997)................................................................. 12

RESTATEMENT (SECOND) OF CONTRACTS (1981) ......................................................... 8

Stephen J. Ware, *The Case for Enforcing Adhesive Arbitration Agreements—With Particular Consideration of Class Actions and Arbitration Fees*, 5 J. AM. ARB. 251 (2006) ....................................................13

Susan P. Koniak & George M. Cohen, *Under Cloak of Settlement*, 82 VA. L. REV. 1051 (1996) ............................................................................................................12

## INTRODUCTION

Plaintiff Jose Trujillo asserts that he is not required to arbitrate, chiefly contending that the arbitration provision in his service agreement with AT&T Mobility LLC ("ATTM") is unconscionable under Illinois law because it contains a class-arbitration waiver. As we explain below, however, Trujillo's unconscionability challenge misfires completely. To begin with, Trujillo urges a view of procedural unconscionability that, if embraced, would condemn a substantial portion of modern consumer transactions. Trujillo's approach would undermine the use of standard form agreements and online contracts. That economically disastrous outcome, however, has no basis in Illinois law.

Trujillo's attack on the substance of his arbitration agreement flies even farther from the mark. Rather than discussing his own agreement, he takes aim at a non-existent one. Trujillo pretends that his arbitration agreement requires ATTM to pay only the first $125 of the customer's arbitration costs, leaving the customer saddled with all other costs, including his or her attorneys' fees. That is simply false, as the plain text of ATTM's arbitration provision reveals. In fact, under ATTM's provision, customers arbitrate for free (unless a claim is held to be frivolous); in addition, they are entitled to substantial premiums ($10,000 and double attorneys' fees) if the arbitrator awards them more than ATTM offered to settle the dispute. Trujillo's failure to grapple with the actual terms of his arbitration agreement requires the rejection of his unconscionability challenge.

Even if Trujillo's unconscionability challenge did not fail as a matter of Illinois law, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, would preempt it, both expressly and under the doctrine of conflict preemption. Trujillo ignores our conflict preemption argument entirely. And his sole response to our express preemption arguments is to assert that Section 2 of the FAA, 9 U.S.C. § 2, permits challenges to arbitration agreements based on generally applicable state-law contract principles, such as unconscionability. That truism, however, fails to respond to the arguments in our opening brief. Trujillo does not grapple with our basic point: that Section 2 forbids distortion of the unconscionability principles that a state applies to other types of contractual terms or the adoption of arbitration-specific rules to deny invalidating an arbitration agreement. Instead, the FAA requires the enforcement of ATTM's exceptionally pro-consumer arbitration provision.

1

**ARGUMENT**

I.     **THE CLASS-ARBITRATION WAIVER IN TRUJILLO'S ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE UNDER ILLINOIS LAW.**

     A.    **Trujillo's Arbitration Agreement Is Not Procedurally Unconscionable.**

Trujillo makes four assertions in support of his contention that the manner in which he agreed to ATTM's arbitration provision was procedurally unconscionable: (1) the provision was "offered on a take-it-or-leave-it basis"; (2) he "could not discover these terms * * * until he had already purchased the iPhone"; (3) ATTM's status as "the sole licensed provider of cellular service for the iPhone" gave him "no choice but to accept" ATTM's terms of service; and (4) the provision "was hidden in a maze of fine print" in an "online text box that is so small one can only see a few lines of the Agreement at a time." Plaintiff's Response to Defendant AT&T Mobility LLC's Motion to Compel Arbitration and Dismiss Action ("Resp.") 14; *see also id.* at 7–8. But these contentions are either factually inaccurate or unsupported by Illinois law (or both).

     1.    Trujillo complains that ATTM presented the arbitration provision on a take-it-or-leave-it basis. Resp. 14. But as the Seventh Circuit has made clear, "[s]tandard-form agreements are a fact of life, and given § 2 of the [FAA], 9 U.S.C. § 2, arbitration provisions in these contracts must be enforced unless states would refuse to enforce all off-the-shelf package deals." *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004); *see also* Defendant AT&T Mobility's Memorandum in Support of Its Motion to Compel Arbitration And Dismiss Action ("Mem.") 7. Illinois does not do so. To the contrary, the Illinois Supreme Court agrees that such contracts are "a fact of modern life" and that "[c]onsumers routinely" enter into "nonnegotiable" contracts that are "presented in fine print in language that the average consumer might not fully understand." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 266 (Ill. 2006). The court emphasized that "[i]t cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable." *Id.* Although the court ultimately determined that an earlier version of ATTM's arbitration provision involved "a degree of procedural unconscionability," that was not because the provision was contained in a "contract of adhesion." *Id.* Rather, the court pointed to the fact that the earlier provision failed to disclose the amount of arbitration fees the customer would be required to pay in the event of a dispute. *Id.* As we pointed out in our opening memorandum, however, the provision relevant here—ATTM's *current* arbitration provision—specifies that ATTM will pay *all* of the costs of arbitration. Mem. 3 & n.1, 8.

     2.    Trujillo next contends that he "could not discover" the terms of service "until he

2

had already purchased the iPhone" and begun the process of subscribing for wireless service online. Resp. 14. That is not so. As we had explained (Mem. 2), the terms of service were available on ATTM's web site and in booklets at the store in which Trujillo bought his iPhone. *See* Berinhout Dec. ¶ 9; *see also James v. McDonald's Corp.*, 417 F.3d 672, 678 (7th Cir. 2005) (Illinois law) (arbitration provision in rules of promotional game was enforceable because the restaurant had posted the rules near the food counter); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1150 (7th Cir. 1997) (Illinois law) ("shoppers can consult public sources," including "the Web sites of vendors," "that may contain * * * information" about the terms).

Even if it were true that Trujillo could review the terms of service only after paying for his iPhone, there is nothing procedurally unconscionable about agreeing to the terms of wireless service after purchasing the iPhone. Trujillo does not dispute that he had two weeks to cancel his service without incurring an early-termination fee if he was not satisfied with either his service or its terms. *See* Mem. 8. Moreover, if Trujillo were correct that it is procedurally unconscionable for payment to precede the provision of the full set of contractual terms, that would require condemning at the threshold the vast majority of retail sales as well as many other types of transactions. Such a result would be sharply out of step with Seventh Circuit precedent, which mandates enforcement of arbitration provisions under these circumstances. *See Hill*, 105 F.3d at 1149; *cf. ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1452 (7th Cir. 1996) (enforcing shrinkwrap license terms). As the Seventh Circuit explained in *Hill*, "[p]ractical considerations support allowing vendors to enclose the full legal terms with their products." 105 F.3d at 1149. The alternative—requiring cashiers "to read legal documents to customers before ringing up sales"—would be hopelessly inefficient. *Id.* For that reason, "[c]ustomers as a group are better off when vendors skip costly and ineffectual steps such as telephonic recitation, and use instead a simple approve-or-return device" in a written contract that customers can peruse at their leisure. *Id.*

**3.** Trujillo also objects that he "had *no choice* but to select [ATTM] as his cellular phone company after purchasing his iPhone." Resp. 7 (emphasis added). But as noted above, Trujillo could have returned his iPhone if he had not wished to accept ATTM's arbitration provision. Trujillo's underlying premise—that he had "no choice" but to purchase an iPhone—is absurd. Of course, we agree that the iPhone is an exceptional product that consumers would want to buy. But an iPhone is by no means a necessity of life, and Trujillo was certainly not under any economic compulsion to purchase one. Thus, the mere fact that no other U.S. cellular carrier

3

offers the iPhone does not mean that Trujillo lacked meaningful alternatives among wireless service providers. As we explained in our opening memorandum (at 8), at least two other carriers offered wireless service in Trujillo's area without requiring arbitration—and one of those carriers, Virgin Mobile, offers several phones that also play music, support mobile Internet access, or both. *See* http://www.virginmobileusa.com/phones/catalog.do.

4.    Trujillo's final complaint is that, rather than providing him with a "typed paper contract" containing the arbitration provision (Resp. 8), ATTM "hid[]" the provision "in a maze of fine print" in "a small print online text box that is so small one can see only a few lines of the Agreement at a time" (*id.* at 14). Again, Trujillo provides an incomplete picture of the facts. To begin with, as we explained in our opening memorandum (at 2), ATTM also sent Trujillo a hard copy of the Terms of Service booklet governing his contract that prominently discloses the arbitration provision. *See* Berinhout Dec. ¶ 11 & Ex. 3 at 1, 11–15.

Moreover, Trujillo's assertion that ATTM "hid[]" its arbitration provision "in a maze of fine print" in an online text box that displays only "a few lines * * * at a time" is simply wrong. In fact, the text box displays more than 20 lines at a time. *See* Berinhout Dec. Ex. 4 at 7. And the self-evident reason that the font size of the text in the printed exhibit appears small in the sample screenshot (*id.*) is that the screenshot was reduced to fit on the page. Even if Trujillo had difficulty reading the text in the text box as it was displayed on his monitor, he could have printed the text by clicking on the "Printable Version" link immediately below the text box. *Id.* In addition, the hard-copy Terms of Service booklet that was mailed to Trujillo was printed in large, easy-to-read type. *See id.* Ex. 3 (actual size).

Indeed, far from hiding the arbitration provision in the text box and the booklet, ATTM highlighted it. The ***very first sentence*** of the service terms in the text box states that the terms include a "binding arbitration clause." *Id.* Similarly, the top of the first page of the Terms of Service booklet declares that "**[t]his Agreement requires the use of arbitration to resolve disputes * * *.**" *Id.* Ex. 3, at 1 (emphasis in original). The first paragraph of the arbitration provision itself states that "[a]**ny arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.**" *Id.* Ex. 3, at 11 (emphasis in original). No other contractual term receives such marquee status. *Cf. Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 172 & n.14 (5th Cir. 2004) (rejecting challenge to the print version of a Cingular arbitration provision based on its allegedly small "type-size" be-

4

cause "the first paragraph of the Cingular contract specifically adverts to the arbitration clause, the only provision given such prominent billing"). In any event, Section 2 of the FAA forbids states from imposing any requirement that arbitration provisions be more prominent than other types of contractual terms (*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–88 (1996)), "and courts cannot use unconscionability doctrines to achieve the same result" (*Iberia*, 379 F.3d at 172).

The cases on which Trujillo relies to support his "concealment" argument are inapposite. In *Razor v. Hyundai Motor America*, 854 N.E.2d 607 (Ill. 2006), the plaintiff received a separate booklet containing the challenged contractual term—a disclaimer of consequential damages— well after entering into the contract. *Id.* at 100–01, 104. Here, by contrast, not only did Trujillo have the opportunity to read ATTM's terms of service before entering into his wireless service agreement, but he also was required to—and did—check a box acknowledging that he had read and agreed to them. Mem. 2, 7–8. *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403 (Ill. App. Ct. 1980), also involved a different situation: While the challenged disclaimer of consequential damages appeared on the back of the contract, the clause on the front of the contract that incorporated the conditions on the back of the page had been "stamped over, indicating that [the obscured language] was irrelevant." *Id.* at 411. Here, far from obscuring any reference to the arbitration provision, ATTM's terms of service give it top billing. *See* page 4, *supra*.

Trujillo also cites (Resp. 8) the Illinois Appellate Court's decision in *Kinkel v. Cingular Wireless LLC*, in which that court deemed an earlier print version of ATTM's arbitration provision to be procedurally unconscionable because it was "hidden in a maze of fine print." 828 N.E.2d 812, 819 (2005). But the Illinois Supreme Court rejected that aspect of the lower court's decision, pointing out that Kinkel had "initial[ed] an acknowledgment provision on the front of the form, stating that she had read the terms and conditions on the back" and that "[t]here is no dispute that the terms and conditions were in her possession and she either read them or could have read them if she had chosen to do so." *Kinkel*, 857 N.E.2d at 266. The same conclusion follows even more strongly here. Rather than having the acknowledgment and the terms of service on separate pages, the acknowledgment box that Trujillo checked was immediately below the text box displaying those terms. Moreover, Trujillo did not have to review the terms while in a store; instead, because he completed the activation process on his home computer, he could

read the terms at his own pace.

Accordingly, Trujillo's arbitration agreement is not procedurally unconscionable. Thus, as we explained in our opening memorandum (at 6), that agreement must entail *extreme* substantive unconscionability to be unenforceable. As we next discuss, it manifestly does not.

### B.    ATTM's Arbitration Provision Is Not Substantively Unconscionable.

Trujillo contends that ATTM's arbitration provision is substantively unconscionable because it prohibits class arbitration. In the absence of that device, Trujillo asserts, neither he nor other customers can vindicate small claims. Resp. 9–13. But Trujillo's arguments rest on a badly mistaken reading of the provision. As we explained in our opening memorandum (at 3–4), ATTM's provision contains a number of pro-consumer features—which Trujillo ignores—that offer him (and other customers) a simple and convenient means of pursuing claims on an individual basis. In any event, Trujillo's attempt to invoke the difficulty that other customers supposedly might have in bringing claims is completely irrelevant to the substantive unconscionability inquiry, which looks to whether *Trujillo* can feasibly arbitrate *his own* claims on an individual basis.

1.    Trujillo first argues that ATTM's current arbitration provision suffers from the same defect identified by the Illinois Supreme Court in *Kinkel*: that it "denies consumers from seeking redress." Resp. 9. Trujillo explains that, without class arbitration, customers cannot afford to bring "small claims action[s] in arbitration." *Id.* at 12. But Trujillo's argument rests entirely on the erroneous premise that "the only change" made to ATTM's arbitration provision after *Kinkel* "is [ATTM's] promise to pay the filing fee for initiating arbitration, a pitiful $125." Resp. 2.[1] Trujillo could not be more wrong.

---

[1]    In a footnote, Trujillo acknowledges another change that ATTM made to the provision invalidated in *Kinkel*—that ATTM will "pay all costs of arbitration"—but dismisses the change because it "only applies to actions brought pursuant to [ATTM's] own notice requirements." Resp. 2 n.2. Trujillo's insinuation—that a commonplace notice requirement serves as a trap for the unwary—is baseless. The notice address is clearly disclosed in the arbitration provision and on ATTM's web site. In addition, ATTM provides a simple Notice of Dispute form on its web site and instructs customers to provide the requisite notice as the very first step in its layperson's guide on how to commence an arbitration. Mem. 4; Berinhout Dec. ¶ 13 & Ex. 6 at 1. And if this Court compels arbitration of Trujillo's claim and he elects to pursue arbitration rather than a small claims court action, he will be able to submit a notice of dispute, thereby triggering ATTM's obligation to pay all arbitration costs. In any event, even if a customer were to fail to provide notice and ATTM were to refuse to excuse the oversight (which it has never done (Supplemental Declaration of Neal S. Berinhout ¶ 5)), the AAA rules cap the customer's share of ar-

6

A comparison between the Cingular provision described in *Kinkel* and Trujillo's arbitration provision reveals that ATTM has made several pro-consumer revisions. The *Kinkel* court identified a number of concerns about the old Cingular provision: that it (i) contained a confidentiality requirement (857 N.E.2d at 278); (ii) did not permit the recovery of any "damages not measured by the prevailing party's actual damages," such as punitive, treble, and statutory damages (*id.* at 256); and (iii) required consumers to pay arbitration costs, specifying only that "fee information" was "available * * * upon request" (*id.*). By contrast, as we explained in our opening memorandum (at 3–4, 9), ATTM's current arbitration provision—the one that applies to Trujillo—is materially different. It neither requires confidentiality nor limits Trujillo's recovery of punitive, treble, or statutory damages. It expressly requires ATTM to "pay **all** AAA filing, administration and arbitrator fees"—not just the filing fee, as Trujillo contends (Resp. 2)—for all non-frivolous claims.[2] Berinhout Dec. Ex. 3 at 13. And it provides Trujillo with new procedural rights, including the right to have "any arbitration hearings" conducted "in the county of [his] billing address" and the right to choose whether to have his claim resolved in an in-person hearing, a telephonic hearing, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator." *Id.*[3]

More importantly, a new feature in Trujillo's arbitration provision entitles him to receive special premiums under certain circumstances. Specifically, as we explained in our opening memorandum (at 3), if the arbitrator awards Trujillo an amount that is "greater than the value of [ATTM's] last written settlement offer before the arbitrator was selected," Trujillo's **minimum recovery is $10,000** (Berinhout Dec. Ex. 3, at 14)—the jurisdictional maximum for small claims court in Illinois (Ill. S. Ct. R. 281). If the amount of the arbitrator's award is less than $10,000, ATTM must also pay Trujillo's attorney "**twice** the amount of attorneys' fees, and reimburse any expenses, that the attorney reasonably accrue[d] for investigating, preparing, and pursuing

---

bitration costs for any claim under $10,000 at $125. Berinhout Dec. Ex. 10 (AAA Supplementary Procedures for Consumer Related Disputes § C-8).

[2]    As we explained in our opening memorandum (at 3 n.1), a customer who files a frivolous claim still must pay only $125 in arbitration costs under the AAA consumer rules.

[3]    As we explained in our opening memorandum (at 3–4), customers have the exclusive right to choose the type of hearing if their claims are for less than $10,000. Berinhout Dec. Ex. 3 at 13. For larger claims, an in-person hearing will be held unless both parties agree to forgo it. *Id.* Ex. 7 (AAA Supplemental Procedures for Consumer Related Disputes §§ C-5, C-6).

[Trujillo's] claim in arbitration." Berinhout Dec. Ex. 3 at 14. Even if the amount of the arbitrator's award is over $10,000—or if the award is less than ATTM's last settlement offer—Trujillo still may recover attorneys' fees and expenses to the same extent that he could in court because the arbitration provision specifies that the right to double attorneys' fees "supplements any right to attorneys' fees and expenses [that Trujillo] may have under applicable law." *Id.* at 15.

These benefits—almost none of which Trujillo would enjoy as a class representative in court[4]—ensure that individual arbitration is a realistic means of resolving Trujillo's claims. Trujillo's failure to offer any proof or argument to the contrary is strong evidence that there is none. Indeed, real-world experience confirms that even the prospect of recovering $10,000 alone would be enough to make pursuing a claim worthwhile: Each year, many thousands of small claims court actions—which Illinois law caps at $10,000 in damages—are filed in Illinois. Moreover, as we explained in our opening memorandum (at 9–10), the premium amounts ($10,000 and double attorneys' fees) are much more than the amounts that Congress and the Illinois Legislature have traditionally authorized in statutory damages in order to encourage plaintiffs to file individual lawsuits.

In short, this case is different from *Kinkel*, which held that an arbitration provision containing a class waiver is unconscionable only if the provision is "burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner." 857 N.E.2d at 274. ATTM's revised arbitration provision is unencumbered by such features, and accordingly is fully enforceable.

---

[4]    At one point in his response, Trujillo asserts that his arbitration agreement "is not supported by consideration because under it [ATTM] gives up no rights * * *." Resp. 8. Trujillo is incorrect. Because Trujillo would not be entitled to the special premiums in court, ATTM's promise to pay premiums in arbitration is consideration because it is the relinquishment of ATTM's "right" not to pay them. Even if ATTM had not undertaken this obligation, the arbitration provision and the class waiver would still be supported by consideration because all of ATTM's obligations under the contract (such as to provide wireless service) constitute consideration for all of Trujillo's obligations. *See Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804, 807 & n.4 (N.D. Ill. 1999) (lender's "promise[] to loan" money is consideration for borrower's "various promises, including her promise to arbitrate," as "Illinois law is quite clear that contracts need not be reciprocal to be enforced."); *see also Oblix*, 374 F.3d at 491 (plaintiff's "salary" is consideration for "arbitration clause" because her employer "paid her to do a number of things; one of the things it paid her to do was agree to non-judicial dispute resolution"); RESTATEMENT (SECOND) OF CONTRACTS § 79 (1981) (so long as there is consideration for the contract as a whole, "there is no additional requirement of * * * equivalence in the values exchanged").

A recent decision by another judge of this Court provides further support for enforcing ATTM's arbitration provision. *See Pivoris v. TCF Fin. Corp.*, 2007 WL 4355040 (N.D. Ill. Dec. 7, 2007). In *Pivoris*, Judge Pallmeyer held that an arbitration provision containing a class waiver—one markedly less consumer-friendly than ATTM's provision—is not substantively unconscionable under *Kinkel*.[5] *Pivoris* (represented by the same counsel as Trujillo) argued that the class waiver in a bank's arbitration provision prevented her from vindicating her claim. Judge Pallmeyer rejected that contention. She first noted that the Seventh Circuit has "had little difficulty" in enforcing an "arbitration clause that precluded class actions." *Id.* at *6 (citing *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 556 (7th Cir. 2003)); *see also Caudle v. Am. Arbitration Ass'n*, 230 F.3d 920, 921 (7th Cir. 2000) (noting in dicta that a "procedural device aggregating multiple persons' claims in litigation does not entitle anyone to *be* in litigation; a contract promising to arbitrate the dispute removes the person from those eligible to represent a class of litigants") (emphasis in original); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 277 (7th Cir. 1995) (rejecting "complain[t] that various inefficiencies and inequities will result from denying [parties] the opportunity to pursue arbitration on a class basis against these defendants" because the FAA requires courts "rigorously [to] enforce the parties' agreement as they wrote it, 'even if the result is "piece-meal" litigation'") (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Judge Pallmeyer then applied the test in *Kinkel* to the bank's arbitration provision. Even though the bank had agreed to pay only the first $2,500 of the customer's share of arbitration costs—and certainly not the special premiums that ATTM has committed to pay customers who are awarded more than ATTM's last settlement offer—the Court held that the provision was enforceable under *Kinkel* because it "does not appear to impose limitations that would preclude [the plaintiff] from obtaining a remedy for her claims against TCF in a cost-effective manner." *Pivoris*, 2007 WL 4355040, at *6. In particular, the provision permitted the customer to recover her attorneys' fees "where such a remedy is available under the substantive law governing the dispute subject to arbitration" (*id.* at *5), and—as here—the plaintiff had not shown that "the cost of arbitration would exceed the costs she would incur in litigation" (*id.*).

None of the decisions on which Trujillo relies (Resp. 10–12) are to the contrary. In

---

[5]     Judge Pallmeyer also concluded that the arbitration provision in *Pivoris* was not procedurally unconscionable because customers had 30 days to reject the arbitration by mailing a letter to the company. 2007 WL 4355040, at *4.

*Green Tree Financial Corp.–Alabama v. Randolph*, 531 U.S. 79 (2000), the Supreme Court did not—as Trujillo implies (Resp. 10)—invalidate the arbitration provision at issue.  531 U.S. at 90–91 & n.6.  To the contrary, the Court rejected as "not supported" and "too speculative" the plaintiff's bare assertions—like Trujillo's assertions here—that the costs of arbitration would preclude her from pursuing her claim at all in arbitration.  *Id.*  Moreover, in *Phillips v. Associates Home Equity Services, Inc.*, 179 F. Supp. 2d 840 (N.D. Ill. 2001) (Kennelly, J.), this Court did not conclude that the AAA's rules lack any safeguards to protect consumers, as Trujillo contends (Resp. 10).  Rather, the Court held that those safeguards were either inapplicable in that case because of the size of the claim (over $70,000) or too discretionary to ensure that the lender would be required to pay the arbitration costs that the plaintiff had proven she could not pay.  179 F. Supp. 2d at 846–47.  Given ATTM's commitments to pay all the costs of arbitration (as well as the special premiums if Trujillo prevails), arbitration under the AAA's consumer procedures (as modified by ATTM's provision) would not be onerous (financially or otherwise) for Trujillo.

Trujillo cites several decisions refusing to enforce arbitration provisions that contain class waivers, but those decisions do not apply Illinois law.  Instead, they apply the unconscionability doctrines of other states.  *See Ting v. AT&T Corp.*, 319 F.3d 1126, 1148 (9th Cir. 2003) (California law); *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1174 (W.D. Wash. 2002) (Washington law); *Muhammad v. County Bank of Rehoboth Beach*, 912 A.2d 88, 96 (N.J. 2006) (New Jersey law); *Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (Cal. 2005) (California law); *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 272 (W. Va. 2002) (West Virginia law); *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. Dist. Ct. App. 1999) (Florida law).[6]

All of these decisions also involved arbitration provisions that were far less consumer-friendly than ATTM's unprecedented provision.  For example, none of those provisions entitled customers to special premiums for receiving an arbitral award that exceeded the defendant's last settlement offer.  Accordingly, the concern that these courts had with the particular provisions before them—that the plaintiffs could not feasibly vindicate their small claims on an individual basis (*see, e.g.*, *Muhammad*, 912 A.2d at 93 n.1 ($180 claim); *Discover*, 113 P.3d at 1109 ($29 claim); *Dunlap*, 567 S.E.2d at 278 & n.8 (claim for $8.46 in actual damages and $100 to $1,000

---

[6]     The other decisions on which Trujillo relies neither apply Illinois law nor involve class waivers.  *See Randolph*, 531 U.S. at 90–91 (waiver of federal statutory rights); *Phillips*, 179 F. Supp. 2d at 843–47 (same); *Mendez v. Palm Harbor Homes, Inc.*, 45 P.3d 594, 601–08 (Wash. Ct. App. 2002) (Washington law).

in statutory damages); *Powertel*, 743 So. 2d at 572 ($4.50 claim))—have no bearing here. Even discounting the double attorneys' fee award, the amount that Trujillo stands to recover if he receives an arbitral award that is greater than ATTM's settlement offer is many orders of magnitude greater than those sums.

Moreover, some of those provisions coupled their class waivers with other clauses that hindered the plaintiffs' ability to obtain redress. In *Ting*, the provision used by AT&T Corporation (a long distance provider that is distinct from ATTM) required the consumer to pay half the cost of arbitration (319 F.3d at 1151), limited the consumer's damages for non-negligence claims "to the amount of charges for service during the affected period" (*id.* at 1133), prohibited recovery for "punitive, reliance, special, and consequential damages" (*id.*), and required the consumer to keep the arbitration confidential (*id.* at 1151–52).[7] The provision in *Luna* also contained a confidentiality provision (236 F. Supp. 2d at 1180–81) as well as a cost-splitting clause under which "a borrower's cost for arbitration likely would exceed the cost of a court proceeding by at least a factor of ten" (*id.* at 1182). The provision in *Powertel* barred the arbitrator from awarding punitive damages or injunctive or declaratory relief. 743 So. 2d at 576.[8] And the provision in *Dunlap* required the consumer to pay half the costs of arbitration (567 S.E.2d at 270–71) and barred the arbitrator from awarding punitive damages (*id.* at 277–78).[9] By contrast, Trujillo's

---

[7]    *Ting* involved California's unconscionability doctrine, and thus has no bearing on the application of the Illinois Supreme Court's decision in *Kinkel* here. Moreover, the Seventh Circuit has held that the chief authority on which *Ting* relied to invalidate AT&T Corporation's arbitration provision—*Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669 (Cal. 2000)—is preempted by Section 2 of the FAA. *See Oblix*, 374 F.3d at 492. As the Seventh Circuit explained, Section 2 of the FAA renders "irrelevant" the desire of "the Supreme Court of California" to "treat arbitration less favorably than other promises in form contracts." *Id.*; *cf. Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 n.5 (5th Cir. 2004) (noting that "California law" is "more hostile to the enforcement of arbitration agreements" than Texas law in part because California law appears to use a "rebuttable presumption of substantive unconscionability" for arbitration provisions in employment contracts).

[8]    By contrast, Florida's Fourth District Court of Appeal has enforced an arbitration provision used by one of ATTM's predecessor entities over an objection to that provision's class waiver. *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1024-27 (Fla. Dist. Ct. App. 2005), *rev. denied*, 918 So. 2d 292 (Fla. 2005).

[9]    Moreover, the federal district court for the Northern District of West Virginia has held that *Dunlap*'s holding that a class waiver renders an arbitration provision unconscionable under West Virginia law is preempted by Section 2 of the FAA. *See Schultz v. AT&T Wireless Servs., Inc.*, 376 F. Supp. 2d 685, 691 (N.D. W. Va. 2005).

11

arbitration agreement contains none of these burdensome clauses.

**2.**    In tacit recognition that his arbitration agreement poses no obstacle to the pursuit of his own claim, Trujillo also complains that the class waiver in ATTM's arbitration provision means that fewer than the total number of potential class members would pursue claims in arbitration. Resp. 12–13. But the unconscionability inquiry under Illinois law does not call for consideration of those third parties not before the Court. The only question at issue is whether Trujillo himself can feasibly vindicate his claim in individual arbitration. In *Kinkel*, the Illinois Supreme Court invalidated the arbitration provision at issue because the plaintiff there would have had to pay $125 in arbitration costs to pursue a $150 claim; accordingly, the costs would have swallowed up so much of the recovery "that ***the plaintiff's*** only reasonable, cost-effective means of obtaining a complete remedy [was] as either the representative or a member of a class." 857 N.E.2d at 275 (emphasis added). Indeed, the court emphasized that the enforceability of a class waiver "must be determined on a case-by-case basis, considering" such factors as "the cost of vindicating the claim relative to the amount of damages that might be awarded under the dispute resolution provisions of the contract." *Id.* Trujillo's approach would disregard the plaintiff-by-plaintiff and claim-by-claim analysis mandated by *Kinkel*.

Even if the fate of non-parties were relevant to the enforceability of Trujillo's arbitration agreement, they could vindicate their claims on an individual basis just as easily as Trujillo can. In any event, Trujillo provides no reason for believing that significant numbers of customers would participate in a class action. Indeed, there is every reason to believe that they would not. Unlike individuals arbitrating small claims under ATTM's provision, who enjoy the prospect of minimum payments of thousands of dollars and double attorneys' fees, members of a class action rarely receive more than pennies on the dollar for their claims in the inevitable class settlement, and the class counsel's fees often come out of the class recovery.[10] Moreover, as we explained in our opening memorandum (at 12 n.10), studies of class action settlements confirm that, when the amount that a consumer can expect to receive is small, very few class members bother to submit a claim form.

Finally, Trujillo does not explain why any possible reduction in ATTM's aggregate li-

---

[10]    *See, e.g.*, Jill E. Fisch, *Class Action Reform, Qui Tam, and the Role of the Plaintiff*, 60 L. & CONTEMP. PROBS. 167, 168 (1997); Susan P. Koniak & George M. Cohen, *Under Cloak of Settlement*, 82 VA. L. REV. 1051, 1051–89 (1996).

ability would be unconscionable under Illinois law when individuals may feasibly pursue their individual claims. Indeed, the *Kinkel* court emphasized that "[i]t is not unconscionable or even unethical for a business to attempt to limit its exposure to class arbitration or litigation" under these circumstances because "consumers may benefit from reduced costs if companies are allowed to" use class waivers. 857 N.E.2d at 278. The Seventh Circuit has similarly underscored that reduction of a company's litigation costs through arbitration benefits consumers: "[A]rbitration offers cost-saving benefits * * * and these benefits are reflected in a lower cost of doing business that in competition are passed along to customers." *Boomer v. AT&T Corp.*, 309 F.3d 404, 419 n.7 (7th Cir. 2002) (quotation marks omitted); *see also* Stephen J. Ware, *The Case for Enforcing Adhesive Arbitration Agreements—With Particular Consideration of Class Actions and Arbitration Fees*, 5 J. Am. Arb. 251, 254–56 (2006) (arbitration "lower[s] [businesses'] dispute-resolution costs," and this "benefit to businesses is also a benefit to consumers" "because whatever lowers costs to businesses tends over time to lower prices to consumers"). Indeed, this benefit is particularly significant because it accrues to ***all*** ATTM customers, the overwhelming majority of whom will never have any reason to pursue arbitration or litigation against ATTM.

* * *

Because Trujillo's only objection to the substance of his arbitration agreement is to deny the existence of its consumer-friendly features—a denial at direct odds with the text of the provision—Trujillo's unconscionability challenge to arbitration should be rejected.

## II.    IF *KINKEL* WERE CONSTRUED TO RENDER ATTM'S ARBITRATION PROVISION UNENFORCEABLE, IT WOULD BE PREEMPTED BY THE FAA.

As we explained in our opening memorandum (at 10–15), any holding that ATTM's uniquely consumer-friendly arbitration provision is unconscionable under Illinois law merely because it requires arbitration on an individual basis would be preempted both expressly by Section 2 of the FAA, 9 U.S.C. § 2, and under the doctrine of conflict preemption. Trujillo fails entirely to respond to our conflict-preemption argument. And his only response to our express-preemption arguments—the assertion that Section 2 of the FAA does not bar the use of "general state-law principles of unconscionability" (Resp. 6)—misses the point entirely.

1.    Trujillo recognizes that Section 2 bars courts from "invalidat[ing] arbitration agreements on the basis of state laws that are only applicable to arbitration agreements." Resp. 5 (citing *Doctor's Assocs., Inc. v. Casarotto, supra*). And we agree with Trujillo that Section 2 permits courts to invalidate arbitration provisions on grounds that are equally applicable to all

13

contractual provisions.   Resp. 3–6; *see also Doctor's Assocs.*, 517 U.S. at 686–88.  But Trujillo fails to acknowledge what follows from these principles:  Although, in general, unconscionability is a ground for the revocation of any contract, Section 2 forbids courts from circumventing the FAA's bar on state laws that single out arbitration agreements by distorting "general principle[s] of contract law, such as unconscionability," in order to "employ [them] in ways that subject arbitration clauses to special scrutiny." *Iberia*, 379 F.3d at 167.  Illinois's generally applicable unconscionability doctrine condemns as substantively unconscionable only "oppress[ively]" "one-sided" contractual terms.  *Kinkel*, 857 N.E.2d at 267 (internal quotation marks omitted). The class waiver in ATTM's arbitration provision, however, is coupled with features that ensure that any rational consumer should prefer to pursue arbitration under ATTM's provision rather than participate in a class action.  *See* Mem. 11–12.  Accordingly, deeming ATTM's provision to fall under that narrow exception to the rule that contracts should be enforced according to their terms would require subjecting ATTM's provision to special scrutiny.

     **2.**     Even if sustaining Trujillo's objection to the enforcement of his arbitration agreement would not require a distortion of Illinois's unconscionability doctrine, invalidating ATTM's provision still would run afoul of Section 2.  Because Section 2 preempts "state laws applicable only to arbitration provisions" (*Doctor's Assocs.*, 517 U.S. at 687), a state rule requiring arbitration provisions to authorize a particular judicial procedure—class actions—would be preempted.  Such a rule necessarily does not apply to all contractual provisions and therefore runs afoul of Section 2.  *Cf. Oblix*, 374 F.3d at 492 ("[N]o state can apply to arbitration (when governed by the [FAA]) any novel rule.").

     The Third Circuit recently reached the same conclusion in *Gay v. CreditInform*, __ F.3d __, 2007 WL 4410362 (3d Cir. Dec. 19, 2007).  After considering the "competing interests" between the FAA's "promotion of arbitration agreements" and Pennsylvania law's "protection of class actions prohibited by such agreements," the Third Circuit held that a state-law rule providing that "the inclusion of a waiver of the right to bring judicial class actions in an arbitration agreement constitutes an unconscionable contract" "cannot prevent the enforcement of [an] arbitration provision" under Section 2.  *Id.* at *20.  The Third Circuit explained that "there is no escape from the fact that" such a rule "deal[s] with agreements to arbitrate, rather than contracts in general," and thus "is not in harmony" with Section 2.  *Id.*  Indeed, the Third Circuit noted, "[i]t would be sophistry to contend" otherwise.  *Id.*

**3.**    In addition, Trujillo's request for a state-law rule that conditions the enforcement of an arbitration agreement on the availability of class relief runs afoul of the Supreme Court's instruction that courts cannot "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). Like the lack of a jury, the lack of class relief is a traditional feature of arbitration.[11]    Accordingly, for Trujillo to seize upon that characteristic constitutes a "cry of 'unconscionable!' [that] just repackages the tired assertion that arbitration should be disparaged as second-class adjudication. It is precisely to still such cries that the [FAA] equates arbitration with other contractual terms." *Carbajal v. H&R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004); *see also* Mem. 12–13; *Schultz*, 376 F. Supp. 2d at 691 (FAA preempts state-law ruling that arbitration provisions containing class waivers are unconscionable because that rule's "application" has the "effect" of "target[ing] arbitration clauses"); *Sydnor v. Conseco Fin. Serv. Corp.*, 252 F.3d 302, 306 (4th Cir. 2001) ("arbitration agreements [will] not be invalidated for failure to replicate a judicial forum"). As the Third Circuit recently explained, "it is perfectly obvious that [a plaintiff] relies on the uniqueness of [an] arbitration provision" when "she contends that the provision is unconscionable because * * * it provides [for] arbitration of disputes on an individual basis in place of litigation possibly brought on a class action basis." *Gay*, __ F.3d at __, 2007 WL 4410362, at *21. Indeed, because the operation of such a state-law rule would "interfere with the appropriate application of the FAA," Section 2 and the "Commerce and Supremacy Clauses of the United States Constitution" forbid it. *Id.*

## CONCLUSION

The Court should grant ATTM's motion to compel arbitration, and dismiss all claims in this action against ATTM.

---

[11]    "Class arbitration" is a new invention. For almost the entirety of the 20th century, it was understood that arbitration was an individualized proceeding. *See* Jean R. Sternlight, *As Mandatory Binding Arbitration Meets the Class Action, Will the Class Action Survive?*, 42 WM. & MARY L. REV. 1, 38–41 & n.148 (2000) (concluding that there were only a handful of class arbitrations before the current century). Indeed, major arbitration providers like the AAA did not promulgate rules for class arbitration until 2003. *See* Carole J. Buckner, *Due Process in Class Arbitration*, 58 FLA. L. REV. 185, 186–87 & n.3 (2006).

Dated: January 11, 2008

Respectfully submitted,

/s Sarah E. Reynolds_____

Victoria Collado
Sarah E. Reynolds
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Tel: (312) 782-0600
Fax: (312) 701-7711

Evan M. Tager (*pro hac vice*)
Archis A. Parasharami (*pro hac vice*)
Kevin Ranlett (*pro hac vice*)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
Tel: (202) 263-3000

*Counsel for Defendant AT&T Mobility LLC*

## CERTIFICATE OF SERVICE

I certify that on January 11, 2008, I caused the foregoing Defendant AT&T Mobility

LLC's Motion to Compel Arbitration and Dismiss Action and the supporting declarations and

memorandum of law to be electronically filed with the Clerk of Court using the CM/ECF system,

which will send notification of such filing to the counsel of record in this matter who are regis-

tered on the CM/ECF.


/s Sarah E. Reynolds

Sarah E. Reynolds
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Tel: (312) 782-0600
Fax: (312) 701-7711