IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE TRUJILLO, on behalf of himself and all others similar situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 07 C 4946 |
| APPLE COMPUTER, INC., and AT&T MOBILITY, LLC, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jose Trujillo, on behalf of a putative class of similarly situated persons, has sued AT&T Mobility LLC and Apple Computer, Inc. over what Trujillo alleges amounts to a hidden, mandatory fee for replacement of the battery in his iPhone, which he purchased in or about July 2007. AT&T Mobility has moved the Court to compel Trujillo to arbitrate his claims against it individually, or to seek relief in small claims court, pursuant to the arbitration provision in the AT&T Mobility service agreement Trujillo accepted when he activated his iPhone. Trujillo contends that the arbitration agreement, notably its bar on class arbitration proceedings, is unconscionable and thus unenforceable.

The parties have briefed the issue of unconscionability (among other things), and as part of its submissions AT&T Mobility has provided three affidavits. These materials reflect the following. Trujillo purchased his iPhone,

made by Apple, in June 2007.  AT&T Mobility is the sole licensed provider of wireless phone service for the device; in other words, the iPhone is useless as a telephone, and perhaps for other purposes, unless the purchaser obtains service from AT&T Mobility.

To activate wireless service for his iPhone, Trujillo was required to accept AT&T Mobility's service agreement.  He did this via the Internet, using Apple's iTunes program, shortly after he purchased the phone.  It appears to be undisputed that the iPhone owner is directed to an AT&T Mobility website on which, after inputting certain preliminary information and choosing a particular service plan, the customer sees a screen that contains the service agreement.  The agreement is too long to be seen all at once; it is unclear how many "pages" a customer has to read altogether (a "page" in this context would consist of the amount of text that the customer can see on the screen at any one time).  The arbitration provision at issue appears near the end of the agreement.

During the online activation process, the customer is asked to click on a box stating "I have read and agree to the AT&T Service Agreement."  If he clicks on this box, the customer is shown a screen listing his billing address, his telephone number, the nature of service obtained and its monthly cost, the duration of the agreement, and other basic information, and his service is then activated, enabling him to use the iPhone.

The materials before the Court do not describe fully what happens if the

customer does not click on the "I have read and agree" box.  It is reasonable to assume, however, that if the customer does not click on this box, his service is not activated, and consequently he is unable to use his iPhone.  In its opening memorandum and reply brief, AT&T Mobility (the party, along with Apple, with access to such evidence), provided no evidence regarding whether a customer who does not sign up with AT&T Mobility is permitted to return the iPhone to Apple and, if so, what financial consequences ensue.  In a supplemental submission, AT&T Mobility submitted an affidavit from an Apple representative who says that though there is ordinarily a "restocking fee" (about fifty dollars) when a customer returns an iPhone, Apple has a written policy establishing that if the customer returns the phone, within fourteen days of purchase, because he does not agree to AT&T Mobility's terms, Apple waives the restocking fee. Williams Decl. ¶¶ 5-6 & Ex. 1.  The Court notes that because AT&T submitted this affidavit only in its final, supplemental submission, Trujillo has not had an opportunity to reply to it.

In support of its motion to compel arbitration, AT&T Mobility also submitted an affidavit from Neal Berinhout, identified as an "Associate General Counsel – Litigation" in AT&T Mobility's legal department.  Berinhout says that AT&T Mobility's terms of service booklet, which includes the service agreement referenced above, "is . . . available in the store[s]" where customers purchase iPhones and is also available "online by going to http://www.wireless.att.com and clicking on 'Wireless Service Agreement' at the bottom of the web page."

Berinhout Decl. ¶ 9.

The enforceability of an arbitration agreement is determined by reference to the pertinent state law principles governing the formation of contracts. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, general state-law contract defenses such as fraud, duress, or unconscionability may operate to invalidate an arbitration agreement. *Doctor's Assocs. v. Casarotto*, 571 U.S. 681, 687 (1996). The relevant state-law principles, however, are those that govern contracts generally, *see* 9 U.S.C. § 2; the Federal Arbitration Act preempts "[a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).

Under Illinois law, which the parties agree provides the relevant state-law principles, a contract may be found unconscionable "based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 22, 857 N.E.2d 250, 263 (2006) (citing *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 99, 854 N.E.2d 607, 622 (2006)). Procedural unconscionability exists when a contract provision is so difficult to locate, read, or understand that a party "cannot fairly be said to have been aware he was agreeing to it." *Id.* at 22, 857 N.E.2d at 264 (quoting *Razor*, 222 Ill. 2d at 100, 854 N.E.2d at 722). Procedural unconscionability analysis takes into account the relative bargaining power of the parties to the agreement and inquires whether there has been "some impropriety during the process of

forming the contract depriving a party of a meaningful choice." *Id.* at 23, 854 N.E.2d at 264 (quoting *Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989, 408 N.E.2d 403, 411-12 (1980)). Among the factors a court must consider are the circumstances of the transaction, such as whether it involved an off-the-shelf form agreement, and whether key terms were appropriately conspicuous or "hidden in a maze of fine print." *Id.*

Trujillo alleges in his complaint that he purchased his iPhone from an Apple retail store in Oak Brook, Illinois, for a price of $533.93. Am. Compl. ¶ 8. It is undisputed that at that time, Trujillo could not activate the phone via any service provider other than AT&T Mobility. In opposing AT&T Mobility's motion, Trujillo contends that he had no access to AT&T Mobility's service agreement and could not even begin the process of signing up for wireless service until after he had purchased the iPhone. The latter point appears to be undisputed. On the former point, however, AT&T Mobility contends, based on Berinhout's affidavit, that Trujillo had access to a paper copy of the service agreement in the store where he purchased the phone and that he also could have accessed it on AT&T Mobility's website before purchasing the iPhone.

The Court believes, based on its review of Illinois case law, that the availability of the AT&T Mobility service agreement to Trujillo prior to his purchase of the iPhone may be a critical factor in determining the issue of procedural unconscionability. *See Razor*, 222 Ill. 2d at 100-01, 854 N.E.2d at 623. The evidence presented to the Court is, however, insufficient to permit

5
delete

the Court to make a finding on that point. The Court issues this opinion to explain why and to give the parties an opportunity to supplement their submissions.

First, Trujillo has not submitted an affidavit or any other evidence to support his contention that the agreement was unavailable to him prior to or at the time of his purchase of the iPhone. On the other hand, the Court does not find Berinhout's affidavit sufficient to establish that the agreement was made available to Trujillo at that time. Despite Berinhout's claim of personal knowledge, the Court cannot imagine how an in-house lawyer from AT&T Mobility possibly could have personal knowledge regarding whether a copy of agreement was available in any given Apple store at a particular point in time. And even were the Court to assume that evidence regarding Apple's habit and practice could suffice to show the availability of the agreement, Berinhout, as an AT&T Mobility lawyer, could not possibly have personal knowledge of *Apple's* habit and practice.

AT&T Mobility also argues that because the service agreement was available on-line, Trujillo had access to it prior to his purchase of the iPhone irrespective of whether a paper copy was available in the Apple store where he bought the phone. AT&T Mobility has not, however, cited any Illinois case supporting the proposition that if an agreement is available prior to the customer's purchase of a product only if the customer goes and looks for it elsewhere (including on-line), that is sufficient under *Razor*. In *Bess v. DirecTV,*

*Inc.*, \_\_\_ Ill. App. 3d \_\_\_, \_\_\_ N.E.2d \_\_\_, 2008 WL 740344 (Ill. App. Mar. 18, 2008), the court considered a situation in which it appeared that the agreement governing the terms for the television service that the customer purchased was not provided to her until after she had activated the service. *Id.* at *1. The court ruled, however, that this was insufficient to render the agreement procedurally unconscionable. It noted that although the plaintiff did not receive the agreement until after she ordered the service, the agreement provided that it was not binding until after she read it and continued to receive the service, and advised the customer that if she did not accept the agreement, her service would be cancelled immediately and she would not be charged a fee. *Id.* at *7-8.

*Bess* is not dispositive of the present case. First, as the Court has noted, the record does not reflect what would have happened had Trujillo declined to accept the AT&T Mobility service agreement. Second, in contrast to the situation in *Bess*, by the time Trujillo clicked to signify his acceptance of the AT&T Mobility agreement, he had already purchased the iPhone, from a completely separate entity (Apple). There is nothing in the AT&T Mobility agreement that told Trujillo that he could, at that point, return his iPhone to Apple, or what consequences would follow if he did so. (Indeed, an argument could be made that the absence of any such indication might be a factor tilting in favor of a finding of procedural unconscionability.) Though AT&T Mobility's final, supplemental submission reflects that Apple allows returns without a fee

7

if an iPhone purchaser does not agree to AT&T Mobility's terms, there is nothing in the record to indicate whether, and how, someone like Trujillo would have been aware of this.

The court in *Bess* cited the Seventh Circuit's decision in *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997), in support of its determination that the DirecTV service agreement was not procedurally unconscionable. In *Hill*, the court addressed the enforceability of an arbitration agreement that was inside a box containing a computer that the plaintiffs had purchased via telephone. Though the court did not discuss the issue of unconscionability in so many words, it found the agreement enforceable despite the fact that the plaintiffs had not seen it before or when they purchased the product.

There are two reasons why the Court does not find *Hill* to be dispositive of the present case. First, as was the case in *Bess*, the agreement made it clear to the customer that he could return the product – without penalty as far as this Court can determine from *Hill* – if he did not accept the agreement's terms. *Id.* at 1149. As noted earlier, the record in the present case does not reflect whether or how Trujillo would have known that.

Second, the court stated in *Hill* that "because the Hills knew before they ordered the computer that the carton would include *some* important terms, and then did not seek to discover these in advance," it was beside the point whether they would have suffered a financial penalty had they declined to

accept the agreement. *Id*. (emphasis in original). It went on to state that the plaintiffs could have asked the vendor to send a copy of any agreement before deciding whether to buy it or could have consulted public sources, including the vendor's website, "that may contain this information." *Id.* But because the plaintiffs kept the computer, the court said, they accepted the terms of the agreement, including the arbitration provision. *Id.*

AT&T Mobility has advanced a similar argument in the present case. This Court is bound to follow the Seventh Circuit's determination of what Illinois law (which is what was at issue in *Hill*) unless there is an intervening and contrary ruling from the state's highest court. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). *Razor*, however, may be such an intervening ruling. In that case, the court concluded that a warranty containing a disclaimer of consequential damages had not been "made available to the plaintiff at or before the time she signed the sale contract" for an automobile because it was contained in an owner's manual in the automobile's glove compartment, "where it was unavailable to the consumer until after she took delivery." *Razor*, 222 Ill. 2d 100-01, 854 N.E.2d at 623.[1] Although it was presumably just as true in *Razor* as in *Hill* that the customer could have asked

---

[1] In *Bess*, the appellate court drew a distinction with *Razor* based on the fact that *Razor* concerned a damages disclaimer, rather than the available dispute-resolution mechanism. *Bess*, 2008 WL 740344 at *8. It is unclear, however, whether the Illinois Supreme Court would consider this distinction significant. In *Kinkel*, though the defendant made a point of this, the court applied a *Razor* procedural unconscionability analysis without suggesting that the fact that an arbitration provision was at issue made any difference. *Kinkel*, 223 Ill. 2d at 25-27, 857 N.E.2d at 265-66.

the vendor to provide a copy of any applicable agreement before buying the automobile, or could have checked a website, there is no indication in the Illinois Supreme Court's decision that this had anything to do with whether the agreement was "made available" in a sense the court considered significant.

That aside, there is, in the Court's view, a significant problem of *proof* above and beyond the question of what the phrase "made available" means. Courts typically do not rely on facts that are in the air, or that can be figured out by the deciding judge, when those facts have not been presented to the court by the parties as evidence that each side has had the opportunity to address. It is important to keep in mind that the Court is being called upon to decide a lawsuit, not to write an opinion piece for general publication. As the Court has noted, the record contains no competent evidence regarding whether the AT&T Mobility service agreement was available to Trujillo in the Apple store before he purchased the iPhone. And on the present record, the proposition that Trujillo actually could have found the agreement on-line is nothing more than supposition. That proposition assumes, without support in the record as it now stands, that someone in Trujillo's position (or perhaps the standard is that of a reasonable consumer) would have been to figure out how to find it. AT&T Mobility has cited no Illinois case law suggesting that this sort of supposition is sufficient, after or in spite of *Razor*, to carry the day on the issue of procedural unconscionability as a matter of Illinois law.

In sum, the gaps in the record as it now stands prevent the Court from

making any sort of finding on the issue of the availability of the AT&T Mobility agreement to Trujillo before or when he purchased his iPhone. Rather than simply ruling on the motion as it now stands – which likely would result in the filing of a renewed motion – the Court believes it makes more sense to give each side an additional opportunity to address the issue. Because it is likely that evidence supporting the proposition that the agreement was available is more accessible to AT&T Mobility, the Court directs AT&T Mobility to provide a supplemental submission in support of its motion to compel arbitration, on or before May 5, 2008. The submission, exclusive of affidavits and other supporting materials, may not exceed five pages. Trujillo is directed to provide a supplemental submission, subject to the same page limitations, on or before May 19, 2008. If (and only if) Trujillo submits an affidavit or other evidence, AT&T may file a reply, not to exceed five pages, on or before May 27, 2008.

```
                              _____
                                   MATTHEW F. KENNELLY
                                   United States District Judge
```
Date: April 18, 2008